**EXHIBIT B**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

| | |
|---|---|
| In re:<br><br>GreenTech Automotive, Inc.,<br><br>Debtor. | Chapter 11<br><br>Case No. 18-10651 |

**DECLARATION OF TIM TIANHUA MAO IN SUPPORT OF
DEBTORS' MOTION FOR ORDER AUTHORIZING GTA
TO IMPLEMENT A KEY EMPLOYEE INCENTIVE PLAN**

I, Tim Tianhua Mao, hereby declare that the following is true to the best of my knowledge, information and belief:

1. I am the President and Chief Executive Officer of Greentech Automotive, Inc. ("**GTA**"), the above-captioned debtor and debtor- in-possession. I have been employed in this position by GTA since February 22, 2018, at which time I replaced Mr. Charles Wang, the longtime Chief Executive Officer and President of GTA. Prior to my appointment as President and CEO of GTA, I worked for Huawei Telecom for twenty-three years. I graduated from Zhejiang University with degrees in science and engineering. I am familiar with the day-to-day operations, businesses and financial affairs of the Debtors.

2. I participated in the development of GTA's proposed chapter 11 key employee incentive plan (the "**KEIP**"), a program that would provide enhanced compensation to key employees based on the achievement of specified goals related to GTA's strategic transaction process in the Chapter 11 case.

---

| | |
|---|---|
| Kristen E. Burgers (VSB No. 67997)<br>HIRSCHLER FLEISCHER<br>8270 Greensboro Drive, Suite 700<br>Tysons, Virginia 22102<br>Telephone: (703) 584-8900<br>Facsimile: (703) 584-8901<br>Email: kburgers@hf-law.com | Mark S. Lichtenstein (pro hac vice pending)<br>Crowell & Moring LLP<br>590 Madison Avenue, 20th Floor<br>New York, New York 10022<br>Telephone: (212) 223-4000<br>Facsimile: (212) 223-4001<br>Email: mlichtenstein@crowell.com |
| *Proposed co-Counsel to the Debtors* | *Proposed co-Counsel to the Debtors* |

3. I am duly authorized to make and submit this declaration (this "**Declaration**") on behalf of GTA in support of its Motion for an Order Authorizing GTA to Implement a Key Employee Incentive Plan (the "**Motion**").[1]

4. Except as otherwise indicated, all statements in this Declaration are based upon: my personal knowledge; information supplied or verified by personnel in departments within GTA; my review of GTA's books and records as well as other relevant documents; my discussions with other members of GTA's management team; information supplied by the GTA's professional advisors; or my opinion based upon experience, expertise and knowledge of GTA's operations, financial condition and history. In making statements based on my review of GTA's books and records, relevant documents and other information prepared or collected by GTA's employees or professional advisors, I have relied upon these employees and professional advisors to accurately record, prepare, collect and/or verify any such documentation or information. I am not a proposed participant in the KEIP program. I am not being compensated for this declaration other than through payments made to me in the ordinary course of business in my position as President and Chief Executive Officer of GTA.

5. If I were called to testify as a witness in this matter, I would testify competently to the facts set forth herein.

6. Due to the enormous financial difficulties suffered by the Debtors pre-petition, as of February 26, 2018 (the "**Petition Date**"), GTA's key executive team was comprised of Norman Chirite, GTA's internal counsel and business advisor, and Peter Huddleston, GTA's Chief Financial Officer (collectively, the "**Key Employees**"). As noted above, when Mr. Charles Wang, GTA's longtime Chief Executive Officer and President, resigned his positions on

---

[1] Unless otherwise defined herein, each capitalized term shall have the meaning ascribed to such term in the Motion.

2

February 22, 2018, I replaced him. Accordingly, as a new President and CEO, the Key Employees are critical to the on-going success of the Business. I need the Key Employees to continue their employment by GTA in order to effectuate a successful restructuring in Chapter 11.

7. Mr. Huddleston and Mr. Chirite have skills, experience, institutional knowledge, and business savvy which are crucial to GTA's success, as it pursues various strategic alternatives in its Chapter 11 case. Whether GTA ultimately seeks to reorganize or to sell assets without the Key Employees to coordinate between me and GTA's professionals, counter-parties and creditors, GTA's chances of realizing value for stakeholders will be severely impaired.

8. Mr. Huddleston is an extremely detail oriented Chief Financial Officer. He has intimate knowledge of all of the claims against GTA and will be able to assist in the diligence to be conducted by potential acquirers in any asset sales and to provide the required financial reporting in the GTA case. Mr. Huddleston also has access to all relevant information necessary for the success of this Chapter 11 case.

9. The ongoing services of Mr. Chirite, a former partner in the corporate department of Weil, Gotshal & Manges and a senior private equity executive, is also critical to the success of this Chapter 11 case. Prior to the Petition Date, Mr. Chirite coordinated all the defensive litigation confronting GTA. Mr. Chirite is also integral to the prosecution of a potentially very valuable affirmative lawsuit against Plastech Holdings Company ("**Plastech**"), an entity that inflicted egregious harm against GTA by filing a fraudulent document in a since dismissed lawsuit, and its attorneys. As a result of the foregoing misconduct, GTA has commenced a lawsuit against Plastech and its attorneys, Susman Godfrey, for multi-million dollars' worth of damages. Mr. Chirite is integral to this valuable litigation claim.

10. In addition to his irreplaceable knowledge of the various pending litigations

3

against GTA, and by GTA, Mr. Chirite is singularly familiar with the terms of the JSAT Interest, which is a critical asset of the GTA. JSAT is a potential plan funder and/or asset acquirer. Mr. Chirite's continued involvement in these cases on behalf of GTA is manifestly important to effecting any transaction in regards to the JSAT Interest or JSAT. Finally, Mr. Chirite is well known to the members of the Board of Directors of GTA (the "**Board**"), the majority of whom are Chinese. Without Mr. Chirite, a sophisticated attorney and businessman, the critical communications and decision-making required across oceans and continents will be severely impaired at a time where clarity and communication has never been more important. Simply put, Mr. Chirite is a critical employee, as is Mr. Huddleston.

11. At present, Mr. Huddleston is paid $240,000.00 per year by the Debtors plus health benefits. Mr. Chirite is paid $200,000 per year by the Debtors plus health benefits. Neither Mr. Huddleston nor Mr. Chirite has a written employment agreement with the Debtors.

12. In anticipation of the Chapter 11 case, Mr. Chirite and Mr. Huddleston worked together with the Board of GTA to formulate an appropriate hybrid KEIP program to incentivize Mr. Chirite and Mr. Huddleston to remain employed by GTA throughout the course of the Chapter 11 case and to help GTA achieve successful results in the Chapter 11 case through a reorganization or a sale of assets. The terms of the KEIP, as agreed by the Board and the Key Employees, is well within GTA's sound business judgment. Those terms are described in detail in the Motion.

## Conclusion

13. Based on the analysis and advice provided to me by GTA's management and advisors, my own experience on GTA's Board and as a GTA executive, and my independent business judgment, I believe that the KEIP is consistent with the important goal of retaining the Key Employees by providing them with incentive opportunities and payments upon termination.

4

Similarly, I believe that the KEIP is reasonable and specifically targeted to achieve important goals during this Chapter 11 case: the KEIP will motivate the Key Employees to maximize recoveries in GTA's restructuring or asset sale and will encourage the Key Employees to remain with GTA during the bankruptcy case.

14. Moreover, the costs of the KEIP Plans were deliberately set at or below market norms for organizations comparable to GTA. Thus, the KEIP comes at a modest cost that is far outweighed by the ongoing contributions these Key Employees provide and the potential damages that may arise by critical employee departures. In sum, unless the KEIP is approved, GTA will struggle to effectuate a successful restructuring.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Dated: February 28, 2018　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　Mr. Tim Tianhua
　　　　　　　　　　　　　　　　　　　　President and Chief Executive Office of GTA

5