UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| In re:<br><br>GreenTech Automotive, Inc.<br><br>Debtor. | Chapter 11<br><br>Case No. 18-10651)<br>(Jointly Administered) |

**OBJECTION OF THE UNITED STATES TRUSTEE TO DEBTORS'
MOTION FOR ENTRY OF AN ORDER AUTHORIZING THE DEBTORS TO
IMPLEMENT A KEY EMPLOYEE INCENTIVE PLAN**

John P. Fitzgerald, III, the United States Trustee for Region Four, which includes the Eastern District of Virginia, Alexandria Division, by and through undersigned counsel, in furtherance of the duties and responsibilities set forth in 28 U.S.C. § 586(a)(3) and (5) and pursuant to 11 U.S.C. §§ 307 and 503, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules for this District, hereby files his objection to the Debtors' Motion for Entry of an Order Authorizing the Debtors to Implement a Key Employee Incentive Plan (the "KEIP Motion") *See* ECF Doc. 10.  In support of his response, the United States Trustee represents and alleges as follows:

**I.        PRELIMINARY STATEMENT**

The Debtors have now been in bankruptcy for less than a week.  Yesterday, however, fearful of losing the historical knowledge held by its top two executives if they were to leave the company, the Debtors filed the KEIP Motion, seeking authority to enter into a KEIP Plan to ensure that the two insiders remain with the Debtors through the duration of the bankruptcy case.

---

Office of United States Trustee
Joseph A. Guzinski, Asst. U.S. Trustee
115 South Union Street, Room 210
Alexandria, VA 22314
(703) 557-7176
joseph.a.guzinski@usdoj.gov

In so doing, the Debtors propose to pay them a combined additional $110,000 in salary, or, if their job is terminated or the Debtors end up liquidating, severance of $440,000.

The Debtor propose this as part of the "first day" motions while ignoring all together the terms and intent of 11 U.S.C. §§503(c)(1) and (2) – which explicitly govern bonus and severance plans for executives. Rather, as statutory authority for the relief they seek, the Debtors direct the Court's attention to Sections 363(b)(1) and 503(c)(3) of the Bankruptcy Code. Given the nature of the proposed increase in salary and/or severance payments under the agreed KEIP Plan and the fact that the Debtors propose to make the purported payments to insiders, the appropriate standard of review is that set forth under Sections 503(c)(1) and (2) of the Bankruptcy Code.

The United States Trustee objects to the KEIP Motion for two main reasons. First, the KEIP Motion is premature and should not be heard as part of the "first day" hearings. Second, the relief sought therein should be denied because the Debtors have failed to meet their evidentiary burden under Sections 503(c)(1) and (2) of the Bankruptcy Code to make the payment proposed under the KEIP Plan.

## II.     FACTUAL BANKGROUND

### A.     General

1. On February 26, 2018 (the "Petition Date"), GreenTech Automotive, Inc. ("GTA") and some of its affiliated companies (collectively, the "Debtors") commenced voluntary cases under Chapter 11 of the Bankruptcy Code. ECF Doc. No. 1. On the Petition Date, the Debtors sought the Court's authority to jointly administer the cases for procedural purposes. ECF Doc. No. 3. Since the orders for relief under Chapter 11 were entered, the Debtors have operated as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code. To date, no trustee or examiner has been appointed in these Chapter 11 cases.

3. To date, the United States Trustee is still in the process of soliciting interest for the appointment of an Official Committee of Unsecured Creditors ("Committee").

4. GTA, headquartered in Sterling, Virginia, was organized in Mississippi in 2009 for the purpose of developing, producing, marketing and financing energy efficient automobiles, including electric cars. *See* KEIP Motion at ¶ 4.

5. The Debtors have experienced significant adverse developments that have hindered the successful operations of GTA's automobile business, impaired access to capital, and resulted in difficulties in the advancement of GTA's investors' permanent residency petitions before the United States government. *See* KEIP Motion at ¶ 8.

6. Over the past approximately two years, GTA has continued to survive only through advances from its principal stockholder and fees for engineering services from Jiangsu Saleen Automotive Technologies, Co., Ltd ("JSAT"). *See* KEIP Motion at ¶ 15.

**The KEIP Motion**

7. On February 28, 2018, the Debtors filed the KEIP Motion, which would cover the only two executive employees in the Sterling, Virginia headquarters: (a) Peter Huddleston, the Chief Financial Officer and (b) Norman Chirite, the internal counsel and business advisor (collectively, the "Key Employees").

8. On February 22, 2018, Mr. Charles Xiaolin Wang, GTA's longtime Chief Executive Officer and President, resigned his positions and was replaced by Mr. Tim Mao. *See* KEIP Motion at ¶ 19.

9. The KEIP Motion is supported by the Declaration of Tim Mao, who, among other things, claims that the Key Employees are critical during the companies' restructuring efforts: "as a new President and CEO, the Key Employees are critical to the on-going success of the

Business. I need the Key Employees to continue their employment by GTA in order to effectuate a successful restructuring in Chapter 11." *See* Declaration of Tim Mao at ¶ 6.

10. Currently, Mr. Huddleston receives a salary of $240,000 per year plus health benefits. Mr. Chirite is paid $200,000 per year plus health benefits. *See* Declaration of Tim Mao at ¶ 11.

11. In order to induce the Key Employees to remain with GTA during the bankruptcy process, the Board of Directors of GTA and Mssrs. Huddleston and Chirite have agreed to the terms of a KEIP, whereby each Key Employee will be offered employment by reorganized GTA with a 25% salary increase (a) upon the successful completion of a Section 363 sale of the JSAT interest or (b) upon confirmation of a plan of reorganization or a plan of liquidation providing for the sale of the JSAT interest. If GTA does not offer such employment, including in the case of a liquidation of GTA, each Key Employee shall be paid a separation payment equal to 100% of base salary.

## ARGUMENT

### I. The KEIP Motion Is Premature and Should Not Be Heard as Part of the First Day Hearing

The Debtors' cases were filed less than a week ago. No schedules have been filed, and the Debtors have sought an extension of the deadlines to file them. No meeting of creditors pursuant to 11 U.S.C. § 341 and no initial debtor interview have yet taken place. And more importantly, the United States Trustee has not had sufficient time to solicit interest for a committee of unsecured creditors. Against that backdrop, the Debtors seek, as part of their "first day" motions, authority to enter into a KEIP Plan with their top two executives. In so doing, the Debtors in essence seek authority to implement the KEIP Plan, binding GTA to increases in salary of approximately $110,000 for the top two executives, or, in the event of a liquidation or termination of employment,

severance payments of 100% of their salary – or a combined $440,000.

The KEIP Motion should not be heard as part of the "first day" motions, as the standards of Bankruptcy Rule 6003 have not been met. With less than two days' notice, the hearing on the KEIP Motion is premature. Accordingly, the United States Trustee requests that the hearing be continued to a later date, at a time when a committee of unsecured creditors may be in place, to allow other parties in interest sufficient notice and an opportunity to proper consider the relief sought in the KEIP Motion and respond accordingly.

**II.     Applicable Legal Standard**

The Debtors seek approval of the KEIP under sections 363(b) and 503(c)(3) of the Bankruptcy Code. Reliance on these two sections, however, is misplaced here.

Section 503(c) governs the allowance of administrative expenses "for actual, necessary costs and expenses of preserving a debtor's bankruptcy estate." 11 U.S.C. § 503(b)(1)(A). The two general overriding policies of § 503 are: (i) to preserve the value of the estate for the benefit of its creditors and (ii) to prevent the unjust enrichment of insiders of the estate at the expense of its creditors. *In re AMR Corp.*, 490 B.R. 158, 164-65 (Bankr. S.D.N.Y. 2013) (citing *In re Journal Register Co.*, 407 B.R. 520, 535 (Bankr. S.D.N.Y. 2009)).

Section 503(c) was added to the Bankruptcy Code in 2005 to respond to "glaring abuses of the bankruptcy system by the executives of giant companies like Enron Corp, and WorldCom Inc. and Polaroid Corporation, who lined their own pockets but left thousands of employees and retirees out in the cold." (Floor Statement, quoted in *In re Dana Corp.*, 358 B.R. 567, 575 (Bankr. S.D.N.Y. 2006) ("Dana II"). *See also In re Hawker Beechcraft, Inc.,* 479 B.R. 308, 312-13 (Bankr. S.D.N.Y. 2012) (quotations omitted) ("Congress enacted § 503(c) as part of the 2005 BAPCPA amendments of the Bankruptcy Code to 'eradicate the notion that executives were entitled to

bonuses simply for staying with the Company through the bankruptcy process'"); *In re Residential Capital, LLC*, 478 B.R. 154, 169 (Bankr. S.D.N.Y. 2012). The abuses at which the provision is aimed regularly manifest themselves in the guise of retention plans. *See* 3 COLLIER ON BANKRUPTCY ¶ 503.17[1] at 503-105 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2013) (section 503(c)'s "purpose was to limit the scope of . . . programs providing incentives to management of the debtor as a means of inducing management to remain employed by the debtor").

As this Court previously explained:

> All too often [insider retention plans] have been used to lavishly reward – at the expense of the creditor body – the very executives whose bad decisions or lack of foresight were responsible for the debtor's financial plight. But even where external circumstances rather than the executives are to blame, there is something inherently unseemly in the effort to insulate executives from the financial risks all other stakeholders face in the bankruptcy process.

*In re U.S. Airways, Inc.*, 329 B.R. 793, 797 (Bankr. E.D. Va. 2005). Congress therefore determined that section 503(c) was necessary "to limit a debtor's ability to favor powerful insiders economically and at estate expense during a chapter 11 case." *In re Pilgrim's Pride Corp.*, 401 B.R. 229, 234 (Bankr. N.D. Tex. 2009).

Through section 503(c), Congress prohibits debtors from paying bonuses to executives and insiders "simply for staying with the Company through the bankruptcy process." *In re Global Home Prods., LLC.,* 369 B.R. 778, 783-84 (Bankr. D. Del. 2007). Rather, under section 503(c)(1), a Debtor may only provide a bonus designed to cause an insider to remain in the Debtor's employ if:

(1)   the bonus payment is essential to the retention of the employee because the employee has a "bona fide job offer from another business at the same or greater rate of compensation;"

    (2)    the services provided by the employee are essential to the survival of the business; and

    3)    the amount of the payment is within the parameters set by the statute.

*See* 11 U.S.C. § 503(c)(1). In light of section 503(c), a retention plan payable to insiders can no longer be "justified solely on the debtor's business judgment." *In re Velo Holdings, Inc.*, 472 B.R. 201, 209 (Bankr. S.D.N.Y. 2012); *In re Borders Grp. Inc.,* 453 B.R. 459, 470-471 (Bankr. S.D.N.Y. 2011). If a proposed transfer falls within §503(c)(1), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. *See In re Dana Corp.*, 351 B.R. 96, 102 (Bankr. S.D.N.Y. 2006) ("Dana I"). Rather, a transfer to an insider to induce the insider to remain with the debtor's business must satisfy the requirements under subdivisions (A), (B), and (C) of Section 503(c)(1) to be subject to this subdivision's exception. *See e.g. In re Residential Capital, LLC*, 478 B.R. at 169 ("[I]f a debtor proposes to (i) make a transfer or incur an obligation; (ii) to or for the benefit of an insider of a debtor; (iii) for the purpose of retaining that insider, it must meet the strict requirements of section 503(c)(1)."); *Dana II*, 358 B.R. at 575 (summarizing the requirements under Section 503(c)(1) of the Bankruptcy Code).

    As for severance payments, section 503(c)(2) provides:

    (c) Notwithstanding subsection (b), there shall neither be *allowed, nor paid* –

    (2) A severance payment to an insider of the debtor, unless –

        (A) The payment is part of a program that is generally applicable to all full-time employees; and

        (B) The amount of the payment is not greater than 10 times the amount of the mean severance pay given to nonmanagement employees during the calendar year in which the payment is made.

11 U.S.C. § 503(c)(2) (emphasis added). Accordingly, the Court may only approve a severance plan under Section 503(c)(2) if the debtor presents evidence that (1) the plan is part of a

severance program generally available to all employees of the Debtor and (2) the amount of the proposed payment is less than ten times the average severance payments made to non-insiders in the year in which the proposed severance payment is made. *See In re Dana Corp.*, 351 B.R. 96, 103 (Bankr. S.D.N.Y. 2006) ("Dana I").

Section 503(c) of the Bankruptcy Code establishes specific evidentiary standards that must be met before a bankruptcy court may authorize payments made to an insider for the purpose of inducing such person to remain with a debtor's business or payments made on account of severance. Id. at 100; 11 U.S.C. § 503(c)(1), (2). This amendment to the Bankruptcy Code makes it abundantly clear that to the extent that a proposed transfer falls within Section 503(c)(1) or (c)(2), then the business judgment rule does not apply, irrespective of whether a sound business purpose may actually exist. *See In re Global Home Prods., LLC*, 369 B.R. 778, 785 (Bankr. D. Del. 2007) (Sections 503(c)(1) and (2) have been described as "high hurdles to clear if payments are primarily designed for retention."). Likewise, the Court may review a compensation plan under Section 503(c)(3) of the Bankruptcy Code only if the proposed plan payments are "not primarily motivated by retention or in the nature of severance." *In re Dana Corp.*, 358 B.R. 567, 576 (Bankr. S.D.N.Y. 2006) ("Dana II").

B.  **The KEIP Motion Must Be Denied Because The Debtors Have Failed to Meet Their Burden to Prove that the KEIP Plan Meets the Requirements of Either Sections 503(c)(1) or 503(c)(2)**

As a threshold matter, the Key Employees are the top two executives of the Debtors. While the Debtors never use the term "insider" in the KEIP Motion, the titles of the Key Employees and the that they and their roles as the CEO's right-hand gentleman clearly qualifies them as "insiders" within the meaning of 11 U.S.C. § 101(31). The Debtors do not appear to dispute that.

Whether the KEIP Plan is subject to the standards of section 503(c)(1) or 503(c)(3);

therefore, hinges upon whether it is primarily retentive. *In re Residential Capital*, 478 B.R. at 170 ("In order to show that the more permissive section 503(c)(3) applies, the Debtors must establish by a preponderance of the evidence that the KEIP is primarily incentivizing and not primarily retentive."). Said differently, in order for section 503(c)(3) to apply – as opposed to the more rigid standards of 503(c)(1), the Debtors must demonstrate that the payments under the KEIP are contingent on achieving challenging standards and surpassing significant hurdles which are difficult to achieve. *In re Hawker Beechcraft*, 479 B.R. at 313. Here, the Debtors have failed to satisfy their evidentiary burden that this is not simply a KERP with KEIP window dressing. To the contrary, the KEIP Motion and the Mao Declaration clearly focus on the importance of retaining the Key Employees – especially after the departure of Mr. Wang last week – as they are the sole executives left who have the historical knowledge needed for a successful Chapter 11 case. *See* KEIP Motion at p.1 ('Without Mssrs. Huddleston's and Chirite's expertise, GTA would have difficulty fulfilling the basic requirements as a debtor in bankruptcy, let alone achieving a successful resolution of the Chapter 11 Case.").

The only milestones that have to be met to guarantee a 25% increase to the Key Employee's base salary is that either a Section 363 sale of the JSAT interest is completed or (b) a plan is confirmed. The Court must examine any proposed KEIP to determine whether the milestones resulting in payment are "designed to motivate insiders to rise to a challenge or merely report to work." *Hawker Beechcraft*, 479 B.R. at 313. The KEIP Motion is completely silent as to whether the purpose of the KEIP is to "incentivize" the participants, and the Debtors have not advanced any evidence or information to demonstrate that the retentive effect of the KEIP Plan is not its <u>primary</u> purpose. To the contrary, the KEIP Motion and Mao Declaration completely dodge the requirements of section 503(c)(1) and do not even acknowledge the hurdles that have to be met.

As set forth above, the KEIP Plan also proposes a severance component in the event that GTA does not offer continued employment or in the event of a liquidation. Similarly, however, the Debtors have failed to meet its evidentiary burden to show: (i) that the severance payments sought to be made are part of a program that generally is applicable to all full-time employees; and (ii) that the amount of the payment is not greater than 10 times the amount of the mean severance pay given to non-management employees during the calendar year in which the payment is made. *See* 11 U.S.C. § 503(c)(2).

Said simply, the Debtors have failed to submit any evidence in support of the KEIP Motion to satisfy their burden under Sections 503(c)(1) and (2) of the Bankruptcy Code or to support the fact that the sections are inapplicable here or that the KEIP Plan should be analyzed under the more lax standards of Section 503(c)(3). Indeed, the Debtors do not make any mention of sections 503(c)(1) and (2) in the KEIP Motion, but rather chose to ignore all together the requirements of those subsection.

## CONCLUSION

The Debtors have failed to show that the KEIP Plan does not contemplate impermissible retention or severance payments to the Debtors' two insiders. The relief sought in the KEIP Motion is also premature and does not satisfy the requirements of Bankruptcy Rule 6003.

WHEREFORE, the United States Trustee respectfully requests that the Court sustain the foregoing Objection, continue the hearing on the KEIP Motion to a later date, and/or deny the relief sought in the KEIP Motion, and grant such other and further relief as the Court may deem just and proper.

**[Signature on Next Page]**

| | |
|---|---|
| DATE:  March 1, 2018 | Respectfully submitted, |
| Office of United States Trustee<br>115 South Union Street<br>Room 210<br>Alexandria, VA  22314<br>Ph:     (703) 557-7274<br>Fax:    (703) 557-7279<br>Email: joseph.a.guzinski@usdoj.gov | JOHN P. FITZGERALD, III,<br>ACTING U.S. TRUSTEE, REGION FOUR<br><br>By:   */s/ Joseph A. Guzinski*<br>        Joseph A. Guzinski<br>        Assistant United States Trustee |

## CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2018, I electronically filed the foregoing with the clerk of the court and, under Local Bankruptcy Rule 5005-3, served it on the parties listed below who are registered Users of the of the CM/ECF system, by the notice of electronic filing generated by the court's ECF system; and on the parties listed below by first class mail, postage prepaid.

Kristen E. Burgers, Esq.
Hirschler Fleischer
8270 Greensboro Drive
Suite 700
Tysons Corner, VA  22102

Mark S. Lichtenstein (pro hac vice pending)
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, New York 10022

*Counsel for the Debtors*

                                                         */s/ Joseph A. Guzinski*
                                                         Joseph A. Guzinski
                                                         Assistant United States Trustee