**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| GreenTech Automotive, Inc., <u>et al.</u>[1] | ) | Case No. 18-10651 |
| | ) | Jointly Administered |
| Debtor. | ) | |
| | ) | |

**JOINT CHAPTER 11 PLAN OF LIQUIDATION OF
GREENTECH AUTOMOTIVE, INC. AND WM INDUSTRIES CORP.**

Kristen E. Burgers (VSB No. 67997)
HIRSCHLER FLEISCHER
8270 Greensboro Drive, Suite 700
Tysons, Virginia 22102
Telephone:  (703) 584-8900
Facsimile: (703) 584-8901
Email:  kburgers@hf-law.com

*Co-Counsel to the Debtors*

Mark S. Lichtenstein (admitted pro hac vice)
CROWELL &  MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:  (212) 223-4000
Facsimile:  (212) 223-4001
Email:  mlichtenstein@crowell.com

*Co-Counsel to the Debtors*

July 3, 2018

---

[1]  The Debtors in these jointly administered chapter 11 cases are GreenTech Automotive, Inc. (Case No. 18-10651), WM Industries Corp. (Case No. 18-10652), Gulf Coast Funds Management, LLC (Case No. 18-10653), American Immigration Center, LLC (Case No. 18-10654), GreenTech Automotive Capital A-3 GP, LLC (Case No. 18-10655), and GreenTech Automotive Partnership A-3, L.P. (Case No. 18-10656).

# ARTICLE I
## DEFINITIONS

1.1 **Scope of Definitions**. For purposes of this Plan, all capitalized terms not otherwise defined shall have the meanings ascribed to such term in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection or clause, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter.

1.2. **Definitions.**

**A-3 GP**: A Delaware limited liability company named GreenTech Automotive Capital A-3 GP, LLC, the general partner of GreenTech Automotive Capital A-3, L.P.

**A-3 LP**: A Delaware limited partnership named GreenTech Automotive Partnership A-3, L.P., the limited partners of which are comprised of all tranche A-3 Investors and which advanced in the aggregate the sum of $44.5 million to GTA pursuant to a loan and security agreement and that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated March 12, 2012, and recorded in the land records of Tunica County, Mississippi on May 24, 2012.

**A-1 Investors**: Certain investors who invested the sum of $500,000 each in GTA and which investment was converted or pursuant to the terms of such investment was convertible into common stock of GTA prior to the Petition Date**.**

**A-2 Investors**: Certain investors who invested the sum of $500,000 each in GTA and which investment was converted or pursuant to the terms of such investment was convertible into common stock of GTA prior to the Petition Date**.**

**A-3 Investors**: Holders of limited partnership interests in A-3 LP.

**A-4 Investors**: Holders of preferred shares in GTA with a value of $500,000 each and which are subject to a redemption right.

**Administrative Expense Claim Bar Date**: The date by which any Administrative Expense Claim must be filed, which is the Effective Date.

**Administrative Expense Claim**: A request for payment of any cost or expense of administration of the Cases allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code.

**Administrative Fee:** The fee each of the A-1 through A-4 Investors paid to Gulf Coast Funds Management, LLC in connection with their investment.

**Allowed Claim**: Any Claim (i)(a) for which a proof of claim has been timely Filed with the Bankruptcy Court by the applicable bar date; or (b) that is listed in the Schedules and not listed as disputed, contingent or unliquidated as to amount; and, in either case, as to which no

objection to the allowance thereof has been Filed by thirty (30) days after the Effective Date or (ii) which has otherwise been allowed by a Final Order. Unless otherwise specified in the Plan, an "Allowed Claim" shall not include: (i) untimely Filed Claims Administrative Expense Claims, or Professional Fee Claims; (ii) interest on the principal amount of an Allowed Claim from and after the Petition Date, (iii) any punitive damages, or (iv) Claims which are Assumed Liabilities.

**Allowed Class   Claim**:  An Allowed Claim in the designated Class.

**APA:**   The Asset Purchase Agreement pursuant to which GTA's assets will be transferred at Auction, a form of which will be provided in the Plan Supplement.

**Assets**:  Any and all right, title, and interest of any of the Debtors in and to property of whatever type or nature.

**Assumed Liabilities**:  Certain liabilities of the Debtors which will be assumed by GR Sub as defined in Section 1 of the APA and pursuant to the Confirmation Order.

**Auction**: A sale of the Debtor's assets on the Confirmation Date subject to higher and better offers in accordance with the auction procedures outlined in the Plan and Disclosure Statement, a form of which will be provided in the Plan Supplement.

**Avoidance Actions**:   Any and all actions, proceedings, accounts, controversies, agreements, promises, claims, and rights of each Debtor and its estate (collectively, the "**Causes of Action**") to avoid or recover a transfer of property of any of the Debtors' estates or an interest of any of the Debtors in property, including, without limitation, actions arising under Sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state, or common law, including fraudulent transfers, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

**Bankruptcy Code**:  Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, if such amendments are made applicable to the Cases.

**Bankruptcy Court**:  The United States Bankruptcy Court for the Eastern District of Virginia, or in the event such court ceases to exercise jurisdiction over any Case, such court or adjunct thereof that exercises jurisdiction over such Case in lieu of the United States Bankruptcy Court for the Eastern District of Virginia.

**Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure pursuant to Title 28 of the United States Code, 28 U.S.C. §§ 2075, as they have been or may hereafter be amended.

**Business**:  GTA's activities in seeking to manufacture and distribute electric vehicles.

**Business Day**:  Any day except a Saturday, Sunday or any day on which commercial banks in the Commonwealth of Virginia are authorized or required by applicable law to close.

**Case**:  With respect to each Debtor, the Chapter 11 case initiated by such Debtor's Filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code (collectively, the "**Cases**").  The Cases are being jointly administered in the Bankruptcy Court under the lead Bankruptcy Case 18-10651-BFK pursuant to the Order Pursuant to Federal Rule of Bankruptcy Procedure 1015 Directing Joint Administration (D.I 3), entered by the Bankruptcy Court on March 9, 2018.

**Cash**:  Legal tender of the United States of America and equivalents thereof.

3

**Claim**:  A claim, as defined in section 101(5) of the Bankruptcy Code, against one of the Debtors (or all or some of them) whether or not asserted or Allowed.

**Claims Objection Bar Date:**  A date which is thirty (30) days after the Confirmation Date.

**Class**:  A category of Claims or Interests designated pursuant to the Plan.

**Class Claim/Interest**:  The specific Class into which Allowed Claims or Allowed Interests are classified pursuant to the Plan.

**Closing**:  The date upon which the Purchased Assets shall be transferred to GR Sub or the winning bidder at the Auction.

**Confirmation**:  Entry by the Bankruptcy Court of the Confirmation Order.

**Confirmation Date**:  The date upon which the Confirmation Order is entered by the Bankruptcy Court.

**Confirmation Order**:  The Order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall include, *inter alia*, provisions, pursuant to Sections 105,363,365 and 1123 of the Bankruptcy Code (i) authorizing sale of the certain assets of the Debtors free and clear of all liens, claims and encumbrances pursuant to Asset Purchase Agreement, (ii) approving the Asset Purchase Agreement, (iii) authorizing and directing the assumption and assignment of certain executory contracts and (iv) waiving the fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d).

**Creditor**: Holder of a Claim.

**Cure**:  The distribution, prior to or within a reasonable period of time following the Effective Date, of Cash or such other property as may be agreed upon by the parties or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease pursuant to section 365(b) of the Bankruptcy Code, in an amount agreed upon by the parties or ordered by the Bankruptcy Court, in payment of all unpaid monetary obligations, without interest, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable non-bankruptcy law.

**Debtor**:  Individually, GTA and WMIC, each of which is a Debtor in its Case (collectively, the "**Debtors**").

**Disallowed**:  A Claim or any portion thereof that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

**Disclosure Statement**: The disclosure statement dated as of July 3, 2018, submitted in connection with Debtors' Joint Chapter 11 Plan of Liquidation, as it may be amended, modified or supplemented from time to time.

**Disputed Claim**:  Any Claim, (i) proof of which has been Filed to which an objection to the allowance thereof has been Filed prior to the Claims Objection Bar Date and such objection has not been either (a) determined by a Final Order or (b) been settled by the parties under a settlement approved by Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019; or (ii) which has not been otherwise allowed by the Bankruptcy Court.

**Distribution**:  The Debtors' distribution of the Debtors' Cash to the Record Holders of Allowed Claims, as set forth in sections 6.3, 6.4, 7.1 and 7.2 of the Plan.

**Docket**: The official record of the Cases as contained in *In re Greentech Automotive, Inc., et al.*, Case No. 18-10651, available in the Office of the Clerk for the Bankruptcy Court and at https://ecf.edva.uscourts.gov/.

**EB-5**:  Employment-Based Immigration Preference program, administered through the United States Customs and Immigration Services, which offers immigrant investors the opportunity to qualify for permanent U.S. residency by investing specified amounts in certain U.S. job creating initiatives in economically-challenged localities in the United States.

**Effective Date**:  Defined in Section 6.1 of the Plan.

**Estate**:  The bankruptcy estate of either GTA or WMIC as the context requires, means, prior to their substantive consolidation pursuant to this Plan, and following their substantive consolidation, the combined bankruptcy estates of the Debtors all as defined by section 541 of the Bankruptcy Code.

**File, Filed or Filing**:  File, filed or filing with the Bankruptcy Court or its authorized designee in the Cases.

**Final Decree**:  As to each Case, the Order entered pursuant to Section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5009-1 closing such Case.

**Final Order**:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, Local Bankruptcy Rules, or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**General Unsecured Claim**:  Any Claim against a Debtor which is not a Secured Claim, an Administrative Expense Claim, a Professional Fee Claim, a Priority Claim, a Priority Tax Claim, or an Intercompany Claim and shall not include Claims that are disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise.

**GR**:  Shenzen Jin Hong Investment Management Co., Ltd., a Chinese investment company and the sponsor of the Plan.

**GR Sub**:  A newly organized limited liability company owned by GTA of which GR is the sole manager and into which the Purchased Assets will be contributed upon the Closing if GR is the winning bidder at the Auction.

**GTA**:   GreenTech Automotive, Inc., one of the administratively consolidated debtors herein.

**GCFM**:   A Louisiana limited liability company named Gulf Coast Funds Management, LLC, which is a designated regional center in the Immigrant Investor Program under the U.S. Department of Homeland Security's U.S. Citizenship and Immigration Services

**Holder**: The Person that is the owner of record of a Claim or Interest, as applicable.

**Impaired**:   With respect to any Class of Claims or Interests, the Claims or Interests in such Class that are impaired within the meaning of Section 1124 of the Bankruptcy Code.

**Intercompany Claim**:   Any Claim by a Debtor against another Debtor.

**Interest**:   Either (i) the legal, equitable, contractual or other rights of any Person with respect to the preferred or common stock, or any other equity interest in any of the Debtors, including any other interest in or right to convert into such equity interest or (ii) the legal, equitable, contractual or other right of any Person to acquire or receive any of the foregoing.

**Interest Rate**:   The federal post-judgment interest rate in effect on the Petition Date, as set forth in 28 U.S.C. §1961.

**Investor**:   Any A-1 Investor, A-2 Investor, A-3 Investor or A-4 Investor.

**JSAT**:   Jiangsu Saleen Automotive Technologies, Co., Ltd.

**JSAT Interest**:   The minority interest in JSAT which GTA received in exchange for the conveyance of its rights in the MyCar intellectual property and certain engineering assistance to JSAT and which is held on behalf of GTA by a subsidiary of WMIC.

**KEIP Payment**:   Key Employee Payment Incentive, as approved by the Bankruptcy Court by ordered entered on June 7, 2018 at Docket No. 169, which, upon final approval of the Bankruptcy Court, shall be an Administrative Expense Claim.

**ListCo**:   A Chinese publicly traded company known as Nanning Baling Technology Co., Ltd.

**ListCo Share Consideration**:   The shares issued by ListCo to Holders of certain Allowed Claims as described in Section 6.4.

**Local Bankruptcy Rules:**   Those rules adopted by the United States Bankruptcy Court for the Eastern District of Virginia.

**Mississippi Parcel**: That certain real estate located in Robinsonville, Tunica County, Mississippi, owned by GTA and on which GTA constructed and fitted-out a manufacturing facility for automobiles.

**Order**:   An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Case or the docket of any other court of competent jurisdiction.

**Person**:   An individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any government, governmental agency or any subdivision, department or other instrumentality thereof.

**Petition Date**:  February 26, 2018, the date on which the Debtors filed their respective petitions for relief in the Bankruptcy Court.

**Plan**:  The Debtors' Joint Chapter 11 Plan of Liquidation dated as of July 3, 2018, as the same may be altered, amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**Plan Administrator**:  Prior to the Confirmation Date, the Debtors, upon consultation with and approval by the A-3 Investors, shall propose a Plan Administrator, as a fiduciary for all Claimants to oversee Plan compliance and the ongoing transactions related to the APA and the Listco Share Consideration and to pursue Estate causes of action that are not part of the Purchased Assets.

**Plan Administrator Fund**:  On the Effective Date, the Reorganized Debtors shall transfer the sum of $50,000 to the Plan Administrator, $15,000 of which shall be designated for the Plan Administrator's actual, necessary expenses and $35,000 of which shall be designated to compensate the Plan Administrator and any Professionals retained by such Plan Administrator.

**Plan Supplement:**  The supplement to the Plan which shall be filed by the Debtors no later than five business (5) days before the Confirmation Hearing and which will include the documents listed in Sections 6.4 and 6.5 hereof and such other documents as the Debtors submit to the Bankruptcy Court in support of the Plan.

**Priority Claim**:  A Claim that is entitled to priority under Section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, and a Priority Tax Claim.

**Priority Tax Claim**:  A Claim that is entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**Professional**:  Any professional employed in the Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code or any Professional or other Person seeking compensation or reimbursement of expenses in connection with the Cases pursuant to Section 503(b)(4) of the Bankruptcy Code.

**Professional Fee Claim**:  A Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred during the period from the Petition Date to the Effective Date.

**Professional Fee Claim Bar Date**:  The date that is forty-five (45) days after the Effective Date.

**Pro Rata**:  A proportionate distribution on account of Allowed Claims, so that each holder of an Allowed Claim in a class receives a percentage of the total distribution to all holders of Allowed Claims in that class that is equal to the percentage of that Allowed Claim holder's Claim to the total amount of Claims held by all Allowed Claim holders in that class

**Purchased Assets**:  Certain assets of the Debtors which will be transferred to the winning bidder at the Auction as defined in Section 1(a) of the APA and pursuant to the Confirmation Order.

**Record Date**:  The Record Date shall be the date on which all record Holders of Claims or Interests shall be recognized.

**Record Holder**:  The Holder of an Interest or Claim as of the Record Date.

**Rejection Claim Bar Date**:   The date by which any Rejection Claim (as defined in Section 3.11 hereof) must be Filed and served in accordance with Section 10.1, which is _____, 2018 at 4:00 p.m. (ET).

**Remaining EB-5 Investor Claims**: The Claims of A-1 Investors and A-2 Investors, in the approximate aggregate amount of $51 million.

**Reorganized Debtor**.  The substantively consolidated Debtors on and after the Effective Date, with GTA being the continuing entity.

**Returned Administrative Fees**:   Those Administrative Fees which the Debtors are using, with the consent of the Investor who paid such Administrative Fee, to support the Debtors' business operations and these Cases.

**Returned Distribution**:   Any portion of the Distribution subsequently returned to the Debtor.

**RMB**:  Ren Min Bi, the Chinese currency basis for the Listco Share Consideration.

**Sale**: The sale of substantially all of the Debtors' Assets, as further described in Section 3.5 of the Disclosure Statement and Section 6.4 of the Plan.

**Schedules**:  With respect to any Debtor, the Schedules of Assets and Liabilities Filed by such Debtor, as such Schedules may be amended from time to in accordance with Bankruptcy Rule 1009.

**Secured Claim**:   Either (i) a Claim that is secured by a lien on property in which the Debtors have an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to Section 506(a) of the Bankruptcy Code; (ii) a Claim which is Allowed under the Plan as a Secured Claim; or (iii) a Claim secured by a lien on collateral to the extent of the value of such collateral as agreed to by the Holder of such Claim and the Debtors.

**Share Consideration:**   Shares in ListCo to be provided to certain Creditors and Investors**.**

**State of Mississippi Claim:**  Secured Claim of State of Mississippi based on security agreement dated September 6, 2011 and that UCC-1 financing statement filed on March 2, 2012 with the Secretary of State for the State of Mississippi.

**Tunica County Secured Claim**:   The Secured Claim of the County of Tunica in Mississippi which is evidenced by that certain Deed of Trust dated September 23, 2011 and recorded among the land records of Tunica County, Mississippi on September 26, 2011.

**Unclassified Claims**:  Claims which, pursuant to Section 1123(a)(1) of the Bankruptcy Code, shall not be placed into a Class.  Unclassified Claims include Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims.

**Unimpaired**:  With respect to a Class of Claims or Interests, any Class that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

**USD**:  United States Dollars.

**United States Trustee**: The Office of the United States Trustee for Region 4, Eastern District of Virginia (Alexandria Division).

**Voting Classes**:  Classes 1, 2, 3, 4, 6, 7, 8, 9, and 11, which are Impaired and entitled to vote on the Plan.

**WMIC:   WM Industries, Corp., o**ne of the administratively consolidated Debtors herein.

1.3 **Rules of Interpretation**.  Unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan. The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan. Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. Except for the rule contained in Section 102(5) of the Bankruptcy Code, the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

1.4   **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.5   **Exhibits**.  All Exhibits are incorporated into and are a part of the Plan as if set forth in full herein.


# ARTICLE II
# SUBSTANTIVE CONSOLIDATION


2.1   **Substantive Consolidation of Cases for Purposes of Distributions**. The Plan is predicated upon, and it is a condition precedent to confirmation of the Plan that the Court provides in the Confirmation Order for substantive consolidation of the Cases of the Debtors' estate into a single entity for purposes of this Plan and the distributions hereunder.  Pursuant to such final order, (i) all assets and liabilities of the Debtors will be merged, (ii) any obligations executed by any Debtor will be deemed to be one obligation of the Debtors, (iii) any claims filed or to be filed in connection with any such obligation will be deemed one claim against the Debtors, (iv) each Claim filed in the Case of any Debtor will be deemed filed against the Debtors in the consolidated Case, in accordance with the substantive consolidation of the assets and liabilities of the Debtors and (v) all transfers, disbursements and distributions made by any Debtor will be deemed to be made by all of the Debtors. Holders of Allowed Claims in each Class shall be entitled to their Pro Rata share of assets available for distribution to such Class without regard to which Debtor was originally liable for such Claim.  The cases of the jointly administered debtors other than the Debtors shall be dismissed.

# ARTICLE III
## ADMINISTRATIVE EXPENSE CLAIMS,
## PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

3.1 **Administrative Expense Claims**. Each holder of an Allowed Administrative Expense Claim shall be entitled to receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Expense Claim, (a) Cash equal to the unpaid portion of such Allowed Administrative Expense Claim, or (b) such other treatment as to which the Debtors and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Cases shall, at the option of the Debtors, be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. Payment shall be made on the later of the Effective Date (or as soon as reasonably practicable thereafter) or within five (5) Business Days after such Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable but not later than ninety (90) days thereafter. Upon entry of the Confirmation Order and pursuant to the terms of the KEIP Order, the KEIP Payment shall be paid as an Administrative Expense Claim as provided herein without the need for filing a claim or other pleading with the Bankruptcy Court. All Disputed Administrative Expense Claims shall be reserved for in full on the Effective Date. Payment of Allowed Administrative Expense Claims on the Effective Date shall be made from the Debtor's Cash, whether from the Cash Consideration (as defined in Section 6.3(a)(iii)) (as available for such purposes), Returned Administrative Fees and/ other available and permitted sources hereunder.

3.2 **Quarterly Fees**. Until such time as the Cases are closed, dismissed or converted, the Reorganized Debtor shall timely pay all quarterly fees due under 28 U.S.C. 1930(a)(6) and file quarterly disbursement reports with the United States Trustee.

3.3 **Bar Date for Administrative Expense Claims**. Any Persons that failed to file a proof of Administrative Expense Claim or request for payment thereof on or before the Administrative Bar Date are forever barred from asserting such Claim against any of the Debtors, the Estates, the Reorganized Debtor or their property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Expense Claim.

3.4 **Professional Fee Claims**. All Persons seeking an award by the Bankruptcy Court of a Professional Fee Claim incurred through and including the Effective Date shall, unless otherwise ordered by the Bankruptcy Court, file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is no later than forty-five (45) days after the Effective Date. Any and all applications for the final allowance of Professional Fee Claims shall be filed and served upon counsel to the Debtors, the United States Trustee, and all Persons on the Debtors' Bankruptcy Rule 2002 service list on or before the Professional Fee Claim Bar Date. A hearing on final allowance of Professional Fee Claims (the "**Final Fee Hearing**") shall be held as soon as practicable after such applications for

Professional Fee Claims are Filed.  Professional Fee Claims that are allowed by a Final Order of the Bankruptcy Court shall be paid.

3.5 **Post-Effective Date Professional Fee Claims**.  The Reorganized Debtor shall pay, to the extent practicable, the reasonable fees and expenses of the professional persons employed by the Reorganized Debtor accrued or incurred after the Effective Date in the ordinary course of business without the necessity for any approval of the Bankruptcy Court. Such professional fees and expenses may be incurred in connection with the implementation and consummation of this Plan, the claims reconciliation process or any other matters as to which such professionals may be engaged by the Reorganized Debtor. The Plan Administrator shall pay the reasonable fees and expenses of the professional persons employed by the Plan Administrator Fund out of the Plan Administrator Fund established pursuant to Section 6.5  herein.

3.6 **Priority Tax Claims**.  Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Reorganized Debtor, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Priority Tax Claim, one of the following treatments: (i) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the first (1st) Business Day that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim; (ii) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at the Interest Rate, over a period not exceeding five (5) years after the Effective Date, which annual payments shall begin one (1) year after the Effective Date; or (iii) such other treatment as to which the Debtors and such Holder shall have agreed upon in writing.

## ARTICLE IV
## TREATMENT AND CLASSIFICATION OF
## CLAIMS AND INTERESTS; IMPAIRMENT

4.1     The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code.  Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in section 1.2 of the Disclosure Statement.

| Class | Type | Status Under Plan | Treatment | Estimated Aggregate Amount in Class ($) | Estimated Recovery of Class (%) |
|---|---|---|---|---|---|
| 1 | Allowed Tunica County Secured Tax Claim | Impaired, Entitled to Vote | On or as soon as practicable after the Effective Date, in full satisfaction and release of the Allowed Tunica County Secured Tax Claim, Tunica County will receive a promissory note payable over five years in equal monthly installments at 2% interest per annum and secured by a statutory lien encumbering the Mississippi Parcel. Tunica County shall retain any current and properly perfected tax lien on the Mississippi Parcel until it receives full payment on account of the Allowed Tunica County Secured Tax Claim. The Tunica County Secured Tax Claim shall be Allowed in the amount of $430,000. | $430,000; Cash consideration on the Effective Date of $107,500 with the balance to be paid in five equal installments. | 100% |
| 2 | Allowed Tunica County Secured Claim | Impaired, Entitled to Vote | On or as soon as practicable after the Effective Date, in full satisfaction and release of the Allowed Tunica County Secured Claim, Tunica County will receive (i) Cash in the amount of 15% of its Allowed Claim and (ii) an amended and restated promissory note from GR Sub payable over [quarterly/annually?]seven years at 6% interest *per annum* with a 15 year amortization schedule and balloon maturity on the seventh anniversary of issuance, in an amount equal to 80% of the Allowed Tunica County Secured Claim and secured by an Amended and Restated Deed of Trust. Tunica County shall retain any current and properly perfected lien on the Mississippi Parcel until it receives full payment on account of the Allowed Tunica County Secured Claim. The Tunica County Secured Claim shall be Allowed in the amount of $2.2 million | $2.2 million Claim; Cash consideration on the Effective Date of $330,000 | 100% |

| Class | Type | Status Under Plan | Treatment | Estimated Aggregate Amount in Class ($) | Estimated Recovery of Class (%) |
|---|---|---|---|---|---|
| 3 | Allowed A-3 LP Secured Claim | Impaired, Entitled to Vote | On or as soon as practicable after the Effective Date, in full satisfaction and release of its Claim, A-3 LP will receive (i) Cash in the amount of 20% of its Allowed Secured Claim and (ii) an amended and restated promissory note and a Deed of Trust from GR Sub payable annually over seven years at 6% interest per annum with a 15 year amortization schedule and balloon maturity on the seventh anniversary of issuance, in an amount equal to 80% of the Allowed A-3 Secured Claim and secured by an Amended and Restated Deed of Trust. A-3 LP shall retain any current and properly perfected lien on the Mississippi Parcel until it receives full payment on account of the Allowed A-3 LP Secured Claim. The A-3 LP Secured Claim shall be Allowed in the amount of $5.2 million and not subject to offset, defense or recharacterization. | $5.2 Million; Cash consideration on the Effective Date of $1.04 million | 100% |
| 4 | Allowed Mississippi Department of Revenue Priority Tax Claim | Impaired, Entitled to Vote | On or as soon as practicable after the Effective Date, in full satisfaction and release of the Allowed Mississippi Department of Revenue Priority Tax Claim, the Mississippi Department of Revenue will receive a promissory note payable over five years in equal monthly installments at 2% interest per annum. | $106,000; no Cash consideration on the Effective Date | 100% |
| 5 | Allowed Priority Claims | Unimpaired, Deemed to Accept | The Debtors assert that no amount is due on account of Class 5 Claims. To the extent such Claims exist, each Holder of an Allowed Priority Claim that has not been satisfied shall be paid by the Debtors in Cash in the full amount of such Allowed Priority Claim. Distributions on account of Allowed Priority on or as soon as practicable after the Effective Date or on the date on which such Allowed Priority Claim becomes due and payable pursuant to the terms thereof, the agreement upon which such Allowed Priority Claim is based, or any applicable Order of the Bankruptcy Court. | $0; no Cash consideration on the Effective Date | 100% |
| 6 | Allowed Unsecured Claim of the State of Mississippi | Impaired, Entitled to Vote | In full satisfaction and release of the Allowed Unsecured Claim of the State of Mississippi, the State of Mississippi will receive a 10% six year unsecured promissory note, payable annually by GR Sub, that allows for a 20% discount upon prepayment. | $3.28 million; no Cash consideration on the Effective Date | 100% |

| Class | Type | Status Under Plan | Treatment | Estimated Aggregate Amount in Class ($) | Estimated Recovery of Class (%) |
|---|---|---|---|---|---|
| 7 | Allowed Unsecured Claims | Impaired, Entitled to Vote | Holders of (i) deficiency claims resulting from the A-3 LP Secured Claim and (ii) all other creditors asserting unsecured claims that are not otherwise classified in the Plan, shall receive, in full satisfaction and release of their Allowed Claim, Listco Share Consideration equal to 105% their Allowed Claim.  A Holder receiving Listco Share Consideration shall be entitled to exercise rights (including the right to sell) or options that are available to Listco shareholders, as set forth herein | $50 million, which includes trade claims of approximately $591,000 the A-3 LP deficiency Claim of approximately $40 million and all other unsecured Claims not otherwise classified herein; no Cash consideration on the Effective Date | 100% |
| 8 | Allowed A-4 Claims | Impaired, Entitled to Vote | Holders of Allowed A-4 Claims. Each Holder thereof shall be entitled to an Allowed Subordinated Unsecured Claim in the aggregate amount of $44 million Each Holder of an Allowed Subordinated Unsecured Claim shall receive, in full satisfaction and release of its Claim, Listco Share Consideration equal to 100% of such Holder's Allowed Claim.  A Holder receiving Listco Share Consideration shall be entitled to exercise rights (including the right to sell) or options that are available to Listco shareholders as set forth herein. | $44 million; no Cash consideration on the Effective Date | 100% |
| 9 | Allowed Claims of Capital Wealth Holdings, Ltd. ("CWH") and American Theme Park Fund, LLC ("ATPF") | Impaired, Entitled to Vote | In full satisfaction and release of their Claims, Holders of Allowed CWH/ATPF Claims will receive ListcoShare Consideration equal to 100% of the Allowed amount of their Claim. | $21 million; no Cash consideration on the Effective Date | 100% |
| 10 | Inter-company Claims | Impaired, Deemed to Accept | Holders of Intercompany Claims will not receive any recovery on account of their Claims.  The Debtors, as Plan proponents, shall be deemed to have accepted the Plan. | n/a | 0% |

| Class | Type | Status Under Plan | Treatment | Estimated Aggregate Amount in Class ($) | Estimated Recovery of Class (%) |
|---|---|---|---|---|---|
| 11 | Remaining EB-5 Investor Claims | Impaired, Entitled to vote | Holders of Allowed Remaining EB5 Investor Claim shall be entitled to an Allowed Claim in the aggregate amount of $51 million for the entire Class.  In full satisfaction and release of the Remaining EB5 Investor Claims, each Holder will receive a Pro Rata Distribution of the Listco Share Consideration remaining after Distributions to Holders of Allowed Subordinated Unsecured Refund Claims (Class 8) and Allowed Claims of CWH/ATPF (Class 9).  Each of the Claims of the A-1 and A-2 Investors are allowed. | $51 million; no Cash consideration on the Effective Date | Uncertain |
| 12 | WMIC Interests | Impaired, Deemed to Reject | WMIC, as interest holder of 52% of GTA, will retain no ownership interests in the Debtors under the Plan, and such Interests shall be cancelled effective as of the Effective Date. | n/a | 0% |

4.2. **Elimination of Classes for Voting Purposes**  Any Class of Claims or Interests that is not populated as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or an Allowed Interest, as applicable, or a Claim or Interest, as applicable, in such Class temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed deleted from the Plan for purposes of voting to accept or reject the Plan by any such Class under section 1129(a)(8) of the Bankruptcy Code.

4.3. **Unimpaired Classes of Claims and Interests**.  Class 5 is an unimpaired Class under the Plan.

4.4. **Impaired Classes of Claims and Equity Interests**.  Classes 1, 2, 3, 4, 6, 7, 8, 9, 10, 11, and 12 are Impaired Classes under the Plan.

4.5. **Classes Deemed to Accept the Plan**.  Class 10 is an Impaired Class but deemed to accept the Plan.

4.6. **Classes Deemed to Reject the Plan**.  Class 12 is an impaired class but deemed to reject the Plan.

### ARTICLE V
### ACCEPTANCE OR REJECTION OF THE PLAN

5.1. **Presumed Acceptance by Unimpaired Classes**.  Claims in Class 5 are unimpaired by the Plan.  Under section 1126(f) of the Bankruptcy Code, the Holders of such Claims (if any) are conclusively presumed to accept the Plan, and the votes of such Holders (if any) will not be solicited.

5.2.    **Classes Deemed to Reject Plan**.   Class 12 is deemed to reject the Plan.

5.3.    **Confirmability and Severability of the Plan**.   The confirmation requirements of section 1129 of the Bankruptcy Code must be satisfied with respect to the Plan.   The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan prior to the Confirmation Hearing upon notice to creditors and other parties in interest.   A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to section 1129 of the Bankruptcy Code shall not limit or affect the Debtors' ability to modify the Plan to satisfy the confirmation requirements of section 1129 of the Bankruptcy Code.

5.4.    **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**.   In the event that the Voting Classes do not vote to accept the Plan, the Debtors shall request the Bankruptcy Court to confirm the Plan under section 1129(b) of the Bankruptcy Code.

**ARTICLE VI**
**IMPLEMENTATION AND EXECUTION OF THE PLAN**

6.1.    **Effective Date.**   The Plan shall become effective on the date which is the first Business Day on which each condition set forth in Article XII of the Plan has been satisfied or waived as set forth therein (the "**Effective Date**").

6.2.    **Property Transferred to the Reorganized Debtor**.   On the Effective Date, all Assets of the Debtors, other than the Purchased Assets, shall be deemed to be the property of and vest in the Reorganized Debtor, free and clear of all liens, claims, encumbrances or interests. Upon and after the Effective Date, the Reorganized Debtor shall have all powers provided for under this Plan and the Confirmation Order and shall have all of the powers of a trustee under the Bankruptcy Code, which powers shall be delegated to the Plan Administrator as set forth in Section 6.5 of the Plan and the Plan Administrator Agreement.

6.3.    **Implementation of the Plan.**   The Plan will be implemented through the Distribution of the Debtor's Cash, whether from the Cash Consideration (as available for such purposes), Returned Administrative Fees and/or other available and permitted sources hereunder and the Listco Share Consideration.   On or by the date that is thirty (30) days after the Effective Date (or as soon as reasonably practicable thereafter), the Reorganized Debtor shall (i) make any necessary payments to Holders of Allowed Unclassified Claims, and (ii) make any required payments to Holders of Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims and Allowed Class 4 Claims.

6.4    **APA.**   GTA and GR, or the winning bidder at the Auction, will enter into the APA under which the following will occur as soon as reasonably practicable after the date the Confirmation Order becomes a Final Order, but in no event later than the Effective Date:

(a)    **Cash Consideration**. GR will transfer $5.0 million (the "**Cash Consideration**") to be applied in accordance with the Plan Distributions set forth in Article IV hereof and the Plan Administrator Fund. Any funds remaining after such Distributions shall be used to fund the continued operations of the Reorganized Debtor, including, but not limited to, the resumption of

production activities on the Mississippi Parcel. For the avoidance of doubt, the Cash Consideration shall be used to pay Claims, Cure Amounts, and expenses under the Plan. GR has also committed to fund up to an additional $5.0 million to maintain GTA's business operations through the date of the Listco Closing (as defined below).

(b)  **Purchased Assets**.  The Debtors shall transfer title to all Purchased Assets other than the JSAT Interest to the GR Sub.  The transfer of the title to the Mississippi Parcel and all personal property located thereon to the GR Sub shall be subject to the secured obligations payable to Tunica County and certain A-3 Investors holding Class 3 Claims in an aggregate amount not to exceed $7,444,000. The transfer of the Mississippi Parcel and the amended and restated deeds of trust executed in favor of the Holders of Class 2 and Class 3 Claims shall be free of any transfer, mortgage recording, or stamp tax under Section 1146 of the Bankruptcy Code.

(c)  **Transfer of Affiliated Entities**.  The Debtors shall cause to be transferred to GR Sub all equity interests in GCFM and the A-3 LP.  A-3 GP shall be replaced in its capacity as general partner of A-3 LP with an entity chosen by A-3 LP.

(d)  **Assumption of Contracts and Leases**.  The Debtors shall assume and assign to GR Sub all of the Debtors' executory contracts and unexpired leases designated by GR Sub, in accordance with the procedures set forth in Section 10.1 of the Plan. Cure Amounts, if any, for the assumed executory contracts and/or unexpired leases shall be paid from the Cash Contribution.

(e)  **Employees**. The Debtors' employees shall be terminated on or before the Effective Date. GR Sub shall hire the Debtors' former employees, except for any employees designated by GR Sub prior to the Effective Date, on terms and conditions substantially similar to the current terms of employment of such persons.

(f)  **Listco Transaction**.  At Closing, and understanding that a bidder other than GR could be the winning bidder at the Auction in which case GR and GR Sub would be replaced by such winning bidder for purposes of the transactional steps provided below:

(i)  The JSAT Interest held on behalf of GTA will be transferred to an account maintained by GR in the name of the Plan Administrator for the benefit of Holders of Claims or Interests in Classes 7, 8, 9, and 11 (the "**Customer Trust Account**").

(ii)  Until the approval of the transfer of GR Sub, and all assets held thereunder, to Listco (the "**Injection Transaction**") by the Chinese securities authorities, GR will fund the continued operations of the business, including resumption of production activities on the Mississippi as set forth above.

(iii)  On the Business Day following the approval of the Injection Transaction by the Chinese securities authorities (the "**Injection Approval Date**"), the following shall occur (the "**Listco Closing**"): (*w*) GR Sub will be transferred to Listco, (*x*) JSAT will convey to Listco all of the MyCar assets, (*y*) the JSAT Interest held by the Plan Administrator will be cancelled, and (z) Listco shall issue the Listco Share Consideration to be held in the Customer Trust Account established by GR in the name of each recipient

of Listco Share Consideration.  Thereafter, Listco will be financially responsible for the United States operations of the Reorganized Debtor.  The issuance of the Listco Share Consideration shall be exempt from securities laws under Section 1195 of the Bankruptcy Code.

(vi)    The Listco Share Consideration shall have a total value equal to ($y$) the RMB-equivalent (based on the RMB central parity rate for USD on the date when the Listco resumes trading) of the Allowed Class 7, Class 8, Class 9 and Class 11 claims under the Plan (see below), minus ($z$) the amount of any portion of the Cash Consideration paid in respect of the Class 4 claims under the Plan.  The Listco Share Consideration shall be determined based on the closing price of the Listco shares for the ten (10) trading days immediately prior to the date Listco resumes trading.  The Listco Share Consideration shall be issued and held in the names of the individual claimants (the "**Listco Share Investors**") in the Customer Trust Account.

(vii)    If the Listco Closing does not occur within one year from the Initial Closing, GR agrees to purchase the rights of any Listco Share Investors who elect to sell to GR, for an amount equal to 25% of such Listco Share Investor's share claim amount in US Dollars.  If GR purchases any Listco Share Investor share claim amounts, it will succeed to the rights of the selling Listco Share Investor with respect to the JSAT Interest, Purchased Assets, and any Listco shares when issued.

(viii)    Following the Listco Closing, each Listco Share Investor shall have the right to elect to withdraw from Listco, as follows:

($x$)    For the period after the Listco Closing and prior to the expiration of the lock-up period on the Listco shares (the "**Lock-up Expiration**"), as set forth below, GR will purchase the Listco shares from Listco Share Investors who elect to sell their shares for an amount equal to (*i*) 50% of the 10-day average stock price for Listco shares immediately prior to the request to withdraw, less (*ii*) GR's management fee, equal to 2%  per annum of the Listco Share Investor's share claim amount (the "**GR Management Fee**") from the date of the Listco Closing through the purchase date and 10% of the amount of the gain in value of the shares over the Listco Share Investor's share claim amount (the "**Listco Share Gain**"), if any;

($y$)    The Lock-up Expiration shall apply as follows: after twelve months for 20% of the Listco Share Investor's shares, after 24 months for an additional 30% of the Listco Share Investor's shares, and after 36 months for the remaining 50% of the Listco Share Investor's shares. After the Lock-up Expiration, Listco Share Investors may direct GR to sell their Listco shares, and will receive the proceeds of such sale, less the GR Management Fee and 20% of the amount of the Listco Share Gain, if any; and

($z$)    The withdrawal rights of the Listco Share Investors will be staged as follows:  (*i*) for the three months following the Listco Closing and following each Lock-up Expiration, only Listco Share Investors in Class 7 may elect to

withdraw, (***ii***) for the second three months following the Listco Closing and following each Lock-up Expiration, only Listco Share Investors in Classes 7 and 8 may elect to withdraw, and (***iii***) after six months following the Listco Closing and following each Lock-up Expiration, any Listco Share Investor may elect withdraw.

6.4.   **Auction.**   The Debtors shall market the sale of the Purchased Assets by (i) publishing a notice of sale in the Washington Post for three (3) consecutive weeks and (ii) filing a Notice of Sale with the Bankruptcy Court and mailing such notice to all parties which have expressed an interest in any or all of the Purchased Assets.  Other potential purchasers of the Purchased Assets may submit bids for the assets on or before the date which is ten (10) days prior to the Confirmation Hearing (the "**Bid Deadline**").   Procedures for submission of alternative proposals (the "**Bid Procedures**") are attached hereto as <u>Exhibit B</u>.   Alternative proposals, together with all supporting documentation, must be submitted by the Bid Deadline to counsel for the Debtors.  Alternative proposals must comply with the Bid Procedures and must provide for an irrevocable offer to purchase the assets on terms similar to or better than the terms set forth in the APA.  Any such alternative proposal must be without due diligence or other qualifications or contingencies, must be accompanied by a current financial statement of the bidder, and must be capable of performance on the Effective Date, which is projected to occur on or before September 15, 2018.   The Debtors, in their sole and reasonable discretion, shall determine whether such alternative proposals constitute "Qualified Bids."

If one or more Qualified Bids are received by the Bid Deadline, the Debtors will conduct an auction in compliance with the Bid Procedures.  If a bidder other than GR submits the highest and best bid at the auction (the "**Winning Bidder**"), the Plan shall be amended to reflect the identity of the winning bidder and the terms of the winning bid.  If the Winning Bidder subsequently defaults on consummating the winning bid, then the next highest and best qualified bidder shall be obligated to close on its bid.  If GR is the next highest and best qualified bidder, the Plan will be consummated on the Effective Date in accordance with its original terms as set forth herein.

6.5.   **Plan Administrator.**   The Debtors, in consultation with counsel for the constituent creditor and investor  groups, shall select a mutually-agreeable Plan Administrator who shall be responsible for making all distributions provided for under the Plan and for enforcing the rights of the Debtors, Creditors, and Investors post-confirmation, particularly with respect to the Listco Share Consideration, and prosecuting causes of action, all as more fully set forth in the Plan Administrator Agreement that will filed with the Bankruptcy Court in the Plan Supplement.  The Plan Administrator Agreement shall set forth the substance of the Plan Administrator Fund.  Notwithstanding the foregoing, A-3 Investors may need their own fiduciary representative in respect to governance and consent matters within the A-3 LP.

6.6   **Transfer Taxes.**   Sales, transfers or other dispositions of assets and property by the Debtors and the Reorganized Debtor, including any transfers arising from the substantive consolidation of the Debtors under this Plan or the sale of the Purchased Assets pursuant to the APA, shall be entitled to the tax treatment provided by section 1146(a) of the Bankruptcy Code, and each recording office or other agent of any governmental unit or other taxing authority shall

record any such documents of transfer or exchange without any further direction or order from the Bankruptcy Court, and without regard to any law imposing a stamp tax or other similar tax.

6.7    **Securities Laws**.  The issuance of the Listco Share Consideration shall be exempt from United States securities laws under Section 1145 of the Bankruptcy Code.

6.8.    **Causes of Action**.  Other than as set forth below, all claims and causes of action held by the Debtors shall vest in the Reorganized Debtor on the Effective Date, and the Reorganized Debtor and/or the Plan Administrator shall have full power and authority to pursue such claims and causes of action for the benefit of the Debtors' creditors.  The proceeds of all claims and causes of action shall be deemed to be the Reorganized Debtor's Cash and shall be administered pursuant to the provisions of this Plan.  Settlements of claims and causes of action shall not be subject to approval by the Bankruptcy Court.  All Avoidance Actions (i) shall survive entry of the Confirmation Order, (ii) shall vest in the Reorganized Debtor, and (iii) shall not be barred or limited by estoppel, whether judicial, equitable, or otherwise.  Causes of action specifically preserved hereunder include, but shall not be limited to, Avoidance Actions, litigation against Plastech Holding Corp., Susman Godfrey LLP, and/or their respective agents, litigation against Gilbert Villareal, VL Automotive, and/or their respective agents, and any collection actions.  Notwithstanding the foregoing, the litigations against Plastech Holding Corp., Susman Godfrey LLP and/or their respective agents and litigation against Gilbert Villareal, VL Automotive and/or their respective agents shall be conveyed to GR Sub or the winning bidder at the Auction, on the Effective Date.  For the avoidance of doubt, any claims or litigation against the Disputed Judgment Creditors and the State of Mississippi, whether in the context of claims objections or Avoidance Actions, shall be the exclusive property of the Debtors and the Reorganized Debtor.

6.9.    **Effectuating Documents.**  The Officers and Directors shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such other actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

6.10    **NOL'S.**  Any and all net operating losses of the Debtors shall be utilized by Listco if possible.

## ARTICLE VII
## DISTRIBUTIONS

7.1    **Distributions**.  The Reorganized Debtor shall make all distributions on account of Allowed Unclassified Claims.  The Plan Administrator shall make all other distributions under the Plan.

7.2    **Delivery of Distributions**.  Distributions, as applicable, shall be made to Record Holders of any Allowed Claims: (i) at the address set forth on the proof of claim Filed by such Holder, (ii) at the address set forth in any written notices of address change Filed by such Holder, (iii) at the addresses reflected in the Schedules if neither a proof of claim nor a written notice of address change has been Filed, or (iv) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records.

7.3 **Stop Payments; Minimum Distribution; Unclaimed Funds**. The Reorganized Debtor or the Plan Administrator, as applicable, may stop payment on any distribution check that has not cleared the payer bank within ninety (90) days of the date of distribution of such check. No distribution under the sum of $10.00 is required to be made by the Reorganized Debtor.

7.4. **United States Trustee Fees**. Any fees payable under 28 U.S.C. § 1930 accruing after the Effective Date shall be timely paid by the Reorganized Debtor. Upon the occurrence of the Effective Date, the Debtors shall be deemed to be a single entity for purposes of calculation of any fees payable under 28 U.S.C. § 1930.

7.5 **Distribution Reports**. The Reorganized Debtor, or the Plan Administrator, as applicable, shall timely file with the Bankruptcy Court periodic distribution reports as required by the United States Trustee detailing the amounts distributed pursuant to this Plan and shall serve such reports on the Office of the United States Trustee.

7.6 **Disallowance of Certain Charges**. All penalties, default interest or late fees that may have accrued on any Claim, other than a Secured Claim, prior to the Confirmation Date are disallowed.

## ARTICLE VIII
## EFFECT OF CONFIRMATION

8.1 **Binding Effect**. On and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, a Debtor or the Reorganized Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

8.2 **Continuation of Injunctions and Stays**. Except as otherwise provided herein or in the Confirmation Order, on and after the Effective Date, all Persons who have held, currently hold or may hold a debt or Claim against a Debtor or the Reorganized Debtor or its Assets are permanently enjoined from taking any of the following actions on account of any such debt or Claim: (i) commencing or continuing in any manner any action or other proceeding against a Debtor, the Reorganized Debtor or its successors or assigns or its Assets; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against a Debtor, the Reorganized Debtor or its successors or assigns or its Assets; (iii) creating, perfecting or enforcing any lien or encumbrance against a Debtor, the Reorganized Debtor or its successors or assigns or its Assets; and (iv) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation Order. Provided the Reorganized Debtor is not in material breach of its obligations under the Plan, the injunctive relief granted herein to the Debtors and the Reorganized Debtor is likewise granted to any co-obligor or guarantor of any debts or obligations of the Debtors or the Reorganized Debtor. Any Person, including but not limited to a Debtor or the Reorganized Debtor, injured by any willful violation of any injunction imposed by the Plan or Confirmation Order shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages, from the willful violator.

8.3 **Post-Confirmation Governance**. Tim Mao, Zhifa Xu, Jinying Zhang, Peter

Huddleston, Trey Agner and Xudong Chai currently sit on the board of directors of GTA (the "**Directors**"). Following the Effective Date, the Directors will serve in their same capacity as Directors of the Reorganized Debtor until the date of the entry of the Final Decree for the Reorganized Debtor. On the date of the entry of such Final Decree, the Directors of the Reorganized Debtor shall be deemed to have resigned to the extent permissible under applicable law. Nothing herein or in the Confirmation Order, including any releases, shall diminish or impair the enforceability of any policy of insurance that may cover claims against a Debtor or any other Person. Each of the matters provided for under this Plan involving the business structure of the Reorganized Debtor or action to be taken by or required of the Reorganized Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by the members of the Reorganized Debtor. Until dissolution, the Reorganized Debtor shall operate under the name of GTA and pursuant to GTA's organizational documents and the laws of the Commonwealth of Virginia.

8.4     **Cancellation of Claims and Interests**. Except as otherwise set forth in this Plan, and except for purposes of evidencing a right to the Distribution, on the Effective Date, all agreements and other documents evidencing the Claims or rights of any Creditor against the Debtors, including all notes, guarantees, mortgages, and all Interests shall be cancelled.

8.5     **Dissolution of the Reorganized Debtor.** On the Effective Date or as soon thereafter as is reasonably practicable, the affairs of the Reorganized Debtor may be wound up and the Reorganized Debtor may be dissolved at any time without the need for any further action or approval; *provided*, *however*, that the entry of the Final Decree as to each Case shall effect such dissolution of the Reorganized Debtor to the extent permissible under applicable law.

## ARTICLE IX
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

9.1     **Objections to and Estimation of Claims and Interests; Prosecution of Disputed Claims and Interests.** The Debtors, Reorganized Debtors, or the Plan Administrator, as applicable, may file with the Bankruptcy Court an objection to the allowance of any Claim or Interest, or any other appropriate motion or adversary proceeding with respect thereto. All such objections will be litigated to Final Order; provided, however*,* that the Debtors, Reorganized Debtor or Plan Administrator, as applicable, may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any such objections to the allowance of such Claims or Interests. Any objection to the allowance of a Claim not Filed by the Effective Date shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the proof of claim Filed by the Holder of such Claim.

In addition, the Reorganized Debtor or the Plan Administrator, as applicable, may, at any time, request that the Bankruptcy Court estimate any Claim under section 502(c) of the Bankruptcy Code, regardless of whether such Claim has been previously objected to or whether the Bankruptcy Court has ruled on any such objection. In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will be limited to the purposes (such as voting on this Plan) determined by the Bankruptcy Court. All of the aforementioned provisions

with respect to objections to Claims or Interests and the claims estimation and resolution procedures, are cumulative and are not necessarily exclusive of one another.

9.2     **No Distributions Pending Allowance.**  Notwithstanding any other provision of the Plan to the contrary, no distribution shall be made to the holder of a Disputed Claim or Interest or the holder of a Claim or Interest that is the subject of a proceeding against it by the Reorganized Debtor or Plan Administrator, as applicable, unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest by Final Order.  While disputes regarding Claims or Interests are pending, the Reorganized Debtor or Plan Administrator, as applicable, shall hold for the benefit of each holder of a Disputed Claim or Interest an amount equal to the distributions that would have been made to the holder of such Disputed Claim or Interest if it were an Allowed Claim or Interest, or, if so determined by the Bankruptcy Court, such amount as estimated by the Bankruptcy Court under section 502(c) of the Bankruptcy Code, until such Claim or Interest becomes an Allowed Claim or Interest.

9.3.    **Distributions After Allowance.**  As soon as practicable after a Disputed Claim or Interest becomes an Allowed Claim or Interest, the holder of such Allowed Claim or Interest shall receive all distributions to which such holder is then entitled under the Plan on account of such Allowed Claim or Interest.  Any Person who holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall receive the appropriate distribution on the Allowed Claim or Interest, although no distribution will be made on the Disputed Claim or Interest until such dispute is resolved by settlement or Final Order.  After resolution of a dispute, any Cash or Listco Share Consideration previously reserved for such Disputed Claim or Interest and not paid in connection with the resolution thereof shall be distributed in accordance with the terms of this Plan.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1.   **Executory Contracts and Unexpired Leases.**  All executory contracts and unexpired leases of the Debtors that are not assumed and assigned, or rejected, either by motion or through the filing of an exhibit to the Plan Supplement which shall identify all contracts to be assumed and the proposed Cure Amount for each such Contract, prior to the Confirmation Date, shall be deemed rejected.  Any Creditor asserting a claim for monetary damages as a result of the rejection of an executory contract or unexpired lease shall file a proof of claim substantially in the form of Official Form 10 with the clerk of the Bankruptcy Court ("**Rejection Claim**"), and serve it upon Debtors' counsel by overnight mail on or before the Rejection Claim Bar Date.

10.2.   **Rejection Claims.**  If no Rejection Claims are filed, such Claims, if any, shall be forever disallowed and barred.  If one or more Rejection Claims are filed the Reorganized Debtor or the Plan Administrator, as applicable, shall have sixty (60) days from the confirmation Date to object thereto.

### ARTICLE XI
### MODIFICATION

11.1.  **Pre-confirmation Amendment**.  The Debtors reserve the right in accordance with the Bankruptcy Code to amend or modify this Plan prior to the Confirmation Date.  After the Debtors file a modification with the Court, this Plan, as modified, becomes the Plan.

11.2.  **Post-confirmation Modification**.  The Debtors may modify this Plan at any time after the Confirmation Date regardless of whether this Plan has been substantially consummated within the meaning of sections 1101(2) and 1127(b) of the Bankruptcy Code, if circumstances warrant such modification, if all required disclosure under section 1125 of the Bankruptcy Code has been given, and the Court, after notice and a hearing, confirms the Plan as modified.

11.3.  **Correction of Errors; Inconsistencies**.  Before or after the Confirmation Date, or in the Confirmation Order, the Debtors may, with the approval of the Court, so long as it does not materially and adversely affect the interests of creditors who have accepted this Plan, remedy any defect or omission, or reconcile any inconsistencies in this Plan or amend this Plan, in such a manner as may be necessary to carry out the purposes and the effect of this Plan without the necessity, if any, of re-soliciting acceptances.

### ARTICLE XII
### CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

12.1  **Conditions to Confirmation**.  Confirmation of the Plan is subject to the following conditions: (i) the Bankruptcy Court having approved the Disclosure Statement by order entered on the docket in the Case of GTA; (ii) the presentment of a Confirmation Order, in form and substance satisfactory to the Debtors and the ad hoc group of A-3 Investors, to the Bankruptcy Court in the Case for entry to confirm the Plan; and (iii) there being no uncured default under the APA.

12.2.  **Conditions to the Effective Date.**  The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied (or the Debtors have waived such conditions): (i) the Bankruptcy Court shall have entered the Confirmation Order in form and substance satisfactory to the Debtors and the ad hoc Group of A-3 Investors; (ii) the Confirmation Order shall have become a Final Order, and (iii)) GR shall have provided the Cash Consideration to the Debtors.

12.3.  **Effect of Nonoccurrence of Conditions to the Effective Date.**  If each of the conditions to the Effective Date is not satisfied or duly waived, then upon motion by the Debtors, made before the time that each of such conditions has been satisfied or duly waived and upon notice to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order shall be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to this section 11.3 of the

Plan, (i) the Plan shall be null and void in all respects; and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights of the Debtors or any other party in interest.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

13.1    **Headings**.    The headings used herein are inserted for convenience only and neither constitute a substantive portion hereof nor in any manner affect the provisions hereof.

13.2    **Business Day**.    If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.3    **Timing**.    Wherever the Plan provides that a payment or distribution shall occur "on" any date, it shall mean "on, or as soon as practicable after" such date.

13.4.    **Binding Effect of the Plan.**    The provisions of the Plan shall be binding upon all parties to the Plan and inure to the benefit of the Debtors' Estates and their respective predecessors, successors, assigns, agents, officers and directors.    The terms of the Plan shall be enforceable against the Debtors, Creditors, Investors, and all parties-in-interest.

13.5    **Retention of Jurisdiction.**    Following the Confirmation Date and the Effective Date, the Bankruptcy Court shall retain jurisdiction in the Case over the provisions of this Plan including Disputed Claims, Rejection Claims, and Professional Fee Claims, and over all disputes and litigation which may be pending on the Confirmation Date, Avoidance Actions whether or not commenced as of the Effective Date, and any controversies which may arise hereafter which would affect the Debtors' ability to carry out the Plan, until all such disputes and litigation shall be concluded and the Plan shall be fully consummated.    Further, the Bankruptcy Court shall retain jurisdiction for the purpose of the Distributions and any related issues which may arise.

13.6    **Governing Law.**    Except as mandated by the Bankruptcy Code or Bankruptcy Rules, as applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with the laws of the Commonwealth of Virginia.

13.7    **Severability.**    Should any provision of the Plan be determined to be unenforceable after the Effective Date, such determination shall in no way limit or affect the enforceability and operative effect of any and all of the other provisions of the Plan.

13.8    **Revocation.**    The Debtors reserve the right to revoke and withdraw the Plan prior to the entry of a Confirmation Order.    If the Debtors revoke or withdraw the Plan, the Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

13.9    **Plan Controls.**    In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement to be

executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence.  In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

13.10  **EB-5 Program**.  The Debtors and Reorganized Debtor will continue to work with USCIS in good faith to advance the interests of the Investors with United States Customs and Immigration Services.  Upon written request, the Debtors and Reorganized Debtor shall use best reasonable efforts to provide certain supporting documents, records or information, which, in their reasonable discretion, may be necessary for the prosecution of the Form I-526 Petition for Immigrant Investor, or the Form I-829 Petition to Remove Conditional Status filed on behalf of any associated foreign national investors or like parties of interest to the Debtors.

13.11  **Releases and Exculpations and Limitation of Liability.**  *Except as otherwise provided in the Plan or Confirmation Order and except as to obligations arising under the Plan, as of the Effective Date, the Debtors, the Plan Administrator and any of such parties' respective present or former members, officers, directors, employees, advisors, managers, attorneys, representatives, financial advisors, and agents, and any such parties' successors and assigns (collectively, the "Released Parties") shall be released from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise, that any of them would have been legally entitled to assert (whether direct or derivative) or that any holder of a Claim, Interest, or other person or entity would have been legally entitled to assert, (whether direct or derivative) based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place before or on the Effective Date, except for acts constituting willful misconduct, gross negligence, or bad faith and, in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.  For the avoidance of doubt, the releases contained herein are not intended to, and shall not, operate as releases of direct third party claims against Charles Wang, Anthony Rodham or Terry McAuliffe, former officers and Directors of GTA.*

*The Released Parties, and any property of or professionals retained by such parties, or direct or indirect predecessor in interest to any of the foregoing persons, shall not have or incur any liability to any person or entity for any act taken or omission, after the Petition Date, in connection with or related to these Cases or the operations of the Debtors' business during the Cases, including but not limited to (i) any actions taken or not taken in connection with the Sale; (ii) formulating, preparing, disseminating, implementing, confirming, consummating or administering the Plan (including soliciting acceptances or rejections thereof); (iii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan; (iv) any Distributions made pursuant to the Plan, except for acts constituting willful misconduct, gross negligence, or bad faith occurring during the Cases, or (v) failure of the Plan or Sale to comply with the requirements of the EB5 program, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan.*

26

13.12   **Injunction.**  The satisfaction, releases and discharge pursuant to the Plan will also act as an injunction against any person or entity commencing or continuing any action, employment of process or act to collect, offset, secure, recoup or recover any Claim or cause of action satisfied, released or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.

13.13   **Notice**. Any notices or requests made in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) commercial overnight delivery service, freight prepaid, and will be deemed to have been given when received by the following parties at the following addresses:

|  |  |
|---|---|
| To the Debtors: | Norman D. Chirite |
|  | GreenTech Automotive, Inc. |
|  | 21355 Ridgetop Circle |
|  | Suite 250 |
|  | Sterling, VA 20166 |
| With copies to: | Mark S. Lichtenstein, Esq. |
|  | Crowell & Moring LLP |
|  | 590 Madison Avenue, 20th Floor |
|  | New York, NY 10022 |
|  | Kristen E. Burgers, Esq. |
|  | HIRSCHLER FLEISCHER |
|  | 8270 Greensboro Drive ,Suite 700 |
|  | Tysons, VA  22102 |

All notices, requests, and distributions to any Creditor or Interest Holder shall be sent to such Creditor or Interest Holder at the address given in each Creditor's proof of claim or each Interest Holder's proof of interest. With regard to any scheduled Creditors or Interest Holder that did not file a proof of claim or interest, all notices, requests, and distributions shall be sent to such Creditor or Interest Holder at the address listed in the Debtor's schedules, unless the Reorganized Debtor receives other instructions in writing from such Creditor(s) or Interest Holder (s).  Notices, requests and distributions to creditors or Interest Holders shall be deemed to have been given when mailed to such address or deposited with a commercial overnight delivery service.  It shall be the obligation of each Creditor or Interest Holder to provide written notice of any change in address to the Debtor or the Reorganized Debtor.

13.14   **Successors and Assigns**.  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

13.15   **Confirmation Pursuant to sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**.  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation by acceptance of the Plan by an impaired Class, if any.  If any class of Claims or Equity Interests entitled to vote on the Plan does not accept the Plan pursuant to section 1126(c), the Debtor reserves the right to request confirmation of the Plan under section 1129(b) of the

Bankruptcy Code and to modify the Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.


**ARTICLE XIV**
**ENTRY OF FINAL DECREE AND CLOSING OF CASE**

Once the Reorganized Debtor has substantially performed all of the duties specified in the Plan and commenced making such payments to holders of Allowed Administrative Expense Claims and Allowed Claims as are contemplated in Articles III and IV, it shall file a certification of full administration and apply for the entry of a Final Decree.

WHEREFORE, the Debtors respectfully request confirmation of this Plan in accordance with section 1129(a) and/or section 1129(b) of the Bankruptcy Code.


July 3, 2018                           Respectfully submitted,


                                       GREENTECH AUTOMOTIVE, INC.

                                       By:    */s/ Norman Chrite*
                                              Name: Norman Chirite
                                              Title:   Internal Counsel


                                              -and-


                                       WM INDUSTRIES, CORP.

                                       By:    */s/ Norman Chrite*
                                              Name: Norman Chirite
                                              Title:   Authorized Signatory

/s/ Kristen E. Burgers
Kristen E. Burgers (VSB No. 67997)
HIRSCHLER FLEISCHER
8270 Greensboro Drive, Suite 700
Tysons, Virginia  22102
Telephone:     (703) 584-8900
Facsimile:     (703) 584-8901
Email:         kburgers@hf-law.com


/s/ Mark S. Lichtenstein
Mark S. Lichtenstein (admitted pro hac vice)
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:     (212) 223-4000
Facsimile:     (212) 223-4001
Email:         mlichtenstein@crowell.com

*Co-Counsel to the Debtors*

9895621.2  043227.00001