**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | |
| | ) | Chapter 11 |
| GreenTech Automotive, Inc., *et al.*[1] | ) | Case No. 18-10651 |
| | ) | Jointly Administered |
| Debtor | ) | |
| | ) | |

**ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL**
**OF THE DEBTORS' ASSETS; (II) AUTHORIZING THE ASSUMPTION AND**
**ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES;**
**(III) APPROVING CERTAIN DEADLINES AND THE FORM, MANNER AND**
**SUFFICIENCY OF NOTICE; AND (IV) GRANTING OTHER RELATED RELIEF**

Upon consideration of the motion filed by GreenTech Automotive, Inc. ("***GTA***") and

WM Industries Corp. ("***WMIC***," together with GTA, the "***Debtors***"), the debtors and debtors-

in-possession herein, for entry of an Order: (I) Authorizing the Sale of Substantially all of the

Debtors' Assets; (II) Authorizing the Assumption and Assignment of Executory Contracts and

Unexpired Leases; (III) Approving Certain Deadlines and the Form, Manner and Sufficiency of

Notice; and (IV) Granting Other Relief (the "***Sale Motion***")[2]; and it appearing that the Court

has jurisdiction over the Sale Motion pursuant to 28 U.S.C. §§ 157 and 134; and it appearing that

this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and the Court having considered the

---

[1]  The Debtors in these jointly administered Chapter 11 Cases are GreenTech Automotive, Inc. (Case No. 18-10651), WM Industries Corp. (Case No. 18-10652), Gulf Coast Funds Management, LLC (Case No. 18-10653), American Immigration Center, LLC (Case No. 18-10654), GreenTech Automotive Capital A-3 GP, LLC (Case No. 18-10655), And GreenTech Automotive Partnership A-3, L.P. (Case No. 18-10656).

[2]  Capitalized terms not otherwise defined herein shall have the meaning ascribed to such term in the Sale Motion or the APA (defined below), as applicable.

Kristen E. Burgers (VSB No. 67997)          Mark S. Lichtenstein (admitted pro hac vice)
HIRSCHLER FLEISCHER                          CROWELL &  MORING LLP
8270 Greensboro Drive, Suite 700             590 Madison Avenue, 20th Floor
Tysons, Virginia 22102                       New York, New York 10022
Telephone:  (703) 584-8900                   Telephone:  (212) 223-4000
Facsimile:  (703) 584-8901                   Facsimile:  (212) 223-4001
Email:  kburgers@hf-law.com                  Email:  mlichtenstein@crowell.com

*Co-Counsel to the Debtors*                  *Co-Counsel to the Debtors*

Sale Motion; and it appearing that the relief requested in the Sale Motion is in the best interests

of the Debtors' bankruptcy estates, their creditors and other parties-in-interest, and after due

deliberation and sufficient cause appearing therefor:

**IT IS HEREBY FOUND AND DETERMINED THAT**:[3]

A.    **Jurisdiction and Venue**.  The Bankruptcy Court has jurisdiction over the Sale

Motion and the transactions contemplated therein (the "***Transactions***") pursuant to 28 U.S.C.

§ 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue in this

district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    **Statutory Predicates**.  The statutory predicates for the relief requested in the Sale

Motion are Sections 105, 363, 365 and 503(b) of the Bankruptcy Code, Bankruptcy Rules 2002,

6004, 6006 and 9014, and Local Rules 6004-1 and 6004-2.

C.    **Final Order**.  This Order constitutes a final order within the meaning of 28

U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent

necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure,

as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just

reason for delay in the implementation of this Order, and expressly directs immediate entry of

judgment as set forth herein.

D.    **Notice**.  Proper, timely, adequate and sufficient notice of the Sale Motion,

including, without limitation, the Transaction, the assumption and assignment of the Assigned

Contracts, if any, the Auction, the Sale Hearing and the Bidding Procedures employed have

been provided in accordance with Sections 102(1), 363 and 365 of the Bankruptcy Code,

Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007 and Local Rules 6004-1 and 6004-2.  Such

notice was good and sufficient and appropriate under the circumstances.  No other or further

---

[3] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.  *See* Fed. R. Bankr. P. 7052.

notice of the Sale Motion, including, without limitation, the Transactions, the assumption and assignment of the Assigned Contracts, the Auction, the Sale Hearing or the Bidding Procedures, is necessary or shall be required.

E.      A notice has been provided to each of the non-Debtor counterparties to the Assigned Contracts identified on the list(s) the Debtors have filed, all as provided in the Sale Motion (the "**Assumption/Assignment Notice**").  The service of the Assumption/Assignment Notice was appropriate and sufficient under the circumstances, and no further notice need be given in respect of assumption and assignment of the Assigned Contracts or establishing Cure Costs (as defined below).  Non-Debtor parties to the Assigned Contracts have had an adequate opportunity to object to assumption and assignment of the Assigned Contracts and the associated Cure Costs.

F.      **Opportunity to Object**.  A reasonable opportunity to object or be heard regarding the requested relief has been afforded to all interested persons and entities.

G.      **The Bidding Procedures Were Proper**.  The Debtors have articulated good and sufficient reasons for the Bankruptcy Court to enter this Order and thereby approve of the Bidding Procedures utilized in obtaining the APA as provided in the Sale Motion.  The Bidding Procedures were reasonably designed to maximize the value of the Assets, were fair, reasonable and appropriate under the circumstances and were in the best interest of the Debtors' estates.

H.      **Business Justification for Sale Transactions**.  The Debtors have demonstrated an adequate business justification supporting their decision to enter into the APA, assume and assign the Assigned Contracts and sell the Assets, including the real property identified on Exhibit A attached hereto, pursuant to the terms of the APA.  Such action is an appropriate exercise of the Debtors' business judgment and in the best interests of the Debtors, their estates and their creditors.  Such business reasons include, but are not limited to, the facts that

(i) the Assets have been marketed and the APA constitutes the highest or otherwise best offers for the Assets; (ii) the continued ownership and operation of the Assets and corresponding costs will continue to deplete the Debtors' resources, so there is a good reason to consummate the Transactions; (iii) the APA and the Transactions will present the best opportunity for the Debtors to realize the value of the Assets on a going concern basis and to avoid decline and devaluation of the related businesses; (iv) the Bidding Procedures utilized were designed to yield the highest or otherwise best bids for the Assets; and (v) the Debtors engaged in good faith, arm's-length negotiations with the Purchaser in order to achieve the Transactions contemplated in the APA.  Entry of this Order and all provisions hereof is a necessary condition precedent to the Purchaser consummating of the Transactions.

I.      **Opportunity to Bid**.  The Debtors and their professionals marketed the Assets and conducted the marketing and sale process as set forth in the Sale Motion.  The Auction and marketing process afforded a full and fair opportunity for any entity to make a higher or otherwise better offer to purchase the Assets.  Based upon the record of these proceedings, all creditors and other parties in interest and all prospective purchasers have been afforded a reasonable and fair opportunity to bid for the Assets.

J.      **Corporate Authority.** (i) The Debtors have full corporate power and authority to execute the APA and all other documents contemplated thereby and the Debtors' sale of the Assets has been duly and validly authorized by all necessary corporate action, (ii) the Debtors have all of the corporate power and authority necessary to consummate the transactions contemplated by the APA, (iii) the Debtors have taken all corporate action necessary to authorize and approve the APA and the consummation of the transactions contemplated thereby, and (iv) no consents or approvals, other than those expressly provided for in the APA, are required for the Debtors to consummate such transactions.

K.      The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession or the District of Columbia.  Neither the Debtors nor Purchaser is entering into the transactions contemplated by the APA fraudulently as provided in any statutory and common law fraudulent conveyance and fraudulent transfer causes of action.

L.      The Debtors, directly and indirectly, are the sole and lawful owner of the Assets. Subject to Sections 363(f) and 365(a) of the Bankruptcy Code, the transfer of each of the Assets to Purchaser, in accordance with the APA will be, as of the Closing Date, a legal, valid, and effective transfer of the Assets, which transfer vests or will vest Purchaser with all right, title, and interest of the Debtors to the Assets free and clear of all Liens (as defined in the APA) and Claims.  Claims, as defined in herein shall include, but not be limited to, all debts arising under, relating to, the Assets, or in connection with any act of the Debtors or claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, restrictive covenants, covenants not to compete, rights to refunds, escheat obligations, interests and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement applicable law, equity or otherwise (including, without limitation, rights with respect to claims and encumbrances (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or Purchaser's interests in the Assets, or any similar rights, (ii) in respect of taxes owed by the Debtors for periods prior to the Closing Date, including, but not limited to, sales, income, use or any other type of tax; or (iii) in respect of restrictions, rights of first refusal, charges or interests of any kind or nature, if any, including,

without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership) relating to, accruing or arising any time prior to the Closing Date.

M.    **Highest or Otherwise Best Offer**.    The total consideration provided by the Purchaser for the Assets is the highest or otherwise best offer received by the Debtors. The Purchaser is the successful bidder for the Assets in accordance with the Bidding Procedures.

N.    **Good Faith Purchaser**.    The APA and the Transactions contemplated thereby have been negotiated by the Debtors and the Purchaser (and their respective affiliates and representatives) in good faith, at arm's length and without collusion or fraud.    The terms and conditions of the APA and the Transactions, including the total consideration to be realized by the Debtors pursuant to the APA, is fair and reasonable, and the Transactions are in the best interest of the Debtors, their creditors and their estates.

O.    The Purchaser is a "good faith purchaser" entitled to the full benefits and protections of Section 363(m) of the Bankruptcy Code with respect to the sale and assignment of the Assets and the Transactions.

P.    The APA was not controlled by an agreement between potential or actual bidders within the meaning of Section 363(n) of the Bankruptcy Code.    The Debtors and the Purchaser have not engaged in any conduct that would cause or permit the APA or the consummation of the Transactions to be avoided, or costs or damages to be imposed, under Section 363(n) of the Bankruptcy Code.    The Purchaser is entitled to all the protections and immunities of Section 363(n) of the Bankruptcy Code.

Q.    The Purchaser is not an "insider" as that term is defined in Section 101(31) of the Bankruptcy Code.

R.    **Consideration.**    The consideration provided by Purchaser pursuant to the APA (a) is fair and reasonable, (b) is the highest or otherwise best offer for the Assets, and (c)

constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formally the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and Section 548 of the Bankruptcy Code) under the laws of the United States any state, territory, possession or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Assets for greater economic value to the Debtors' estate than Purchaser.  Approval of the Sale Motion, the APA and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors and other parties in interest.

S.      The sale of the Assets pursuant to the APA is necessary for and in connection with the proposal of and is in contemplation of the Debtors' proposed plan of liquidating and, as a result, the Transactions or any transaction related thereto or contemplated thereby shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment.

T.      **Assumption and Assignment in Best Interests**.  The assumption and assignment of the Assigned Contracts by the Debtors pursuant to the terms of this Order is integral to the APA and is in the best interests of the Debtors, their estates and their creditors, and represents the exercise of reasonable business judgment by the Debtors.  Pursuant to Section 365(f) of the Bankruptcy Code, the Assigned Contracts shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Purchaser notwithstanding any provision of the Assigned Contracts or other restriction prohibiting their assignment or transfer.

U.      **Cure/Adequate Assurance**.  The Debtors have met all of the requirements of Section 365(b) of the Bankruptcy Code for each of the Assigned Contracts.  The Debtors have provided adequate assurance of cure of any default existing prior to the Closing Date under any

of the Assigned Contracts, within the meaning of Section 365(b)(1) of the Bankruptcy Code. The Purchaser has provided adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of Section 365(b)(1)(C) of the Bankruptcy Code (including to the extent, if any, modified by Section 365(b)(3)).

V.   **Free and Clear**.  The sale and assignment of the Assets to the Purchaser will be, as of the Closing Date, a legal, valid and effective transfer of such assets, and each such transfer and assignment shall, upon the Closing Date, vest the Purchaser with all right, title and interest of the Debtors to the Assets free and clear of all Liens, Claims and Excluded Liabilities, with any such Liens, Claims or Excluded Liabilities to attach to the net proceeds to be received by the Debtors in the same priority and subject to the same defenses and avoidability, if any, as were in existence on the Closing Date.  The Purchaser would not enter into the APA to acquire the Assets if the sale of the Assets were not free and clear of all Liens and Excluded Liabilities, or if the Purchaser would, or in the future could, be liable for any such Liens or Excluded Liabilities.

W.   **Satisfaction of 363(f) Standards**.  The Debtors may sell and assign the Assets free and clear of all Liens to the maximum extent permitted by law, because, with respect to each creditor asserting a Lien, one or more of the standards set forth in sections 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens who did not object or who withdrew their objections to the Transactions or any Assumption/Assignment Notice and proposed Cure Cost are deemed to have consented to the Sale Motion and sale and assignment of the Assets to the Purchaser pursuant to Section 363(f)(2) of the Bankruptcy Code.  Those holders of Liens who did object fall within one or more of the other subsections of Section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, if any, attach to the net proceeds of the Transactions ultimately attributable to the Assets in which such holders allege a Lien, in the same order of priority, with the same validity, force and effect that such holder had

prior to the Transactions, and subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

X.    **No Successor Liability**.  The transactions contemplated under the APA do not amount to a consolidation, merger, or de facto merger of Purchaser and the Debtors and/or the Debtors' estates; there is not substantial continuity between Purchaser and the Debtors; there is no continuity of enterprise between the Debtors and Purchaser; Purchaser is not a mere continuation of the Debtors or their estates; and Purchaser is not a successor or assignee of the Debtors or their estates for any purpose, including, but not limited to, under any federal, state or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule or regulation (including without limitation filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine or common law, or under any product warranty liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine and Purchaser and its affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act (the "*WARN Act*"), 929 U.S.C. §§ 210 *et seq.*, or the Comprehensive Environmental Response Compensation and Liability Act and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act and/or the Fair Labor Standards Act.  Except for the Assumed

Liabilities, the (i) transfer of the Assets to Purchaser and (ii) assumption and assignment to Purchaser of the Assumed Contracts do not and will not subject Purchaser to any liability whatsoever with respect to the operation of the Debtors' business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, on any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

Y.      **Time is of the Essence**.    Time is of the essence in consummating the Transactions.  In order to maximize the value of the Debtors' assets, it is essential that the sale and assignment of the Assets and the Assigned Contracts occur within the time constraints set forth in the APA.  Specifically, the Transactions must be approved and consummated promptly in order to preserve the viability of the businesses subject to the Transactions as going concerns, to maximize the value to the Debtors, their estates, their creditors and all other parties in interest.  Accordingly, there is cause to lift the stays contemplated by Bankruptcy Rules 6004 and 6006.

Z.      **Sale in Contemplation of a Plan**.  The sale of the Assets by the Debtors is in contemplation of a plan of liquidation, which shall be filed as soon as reasonably practicable after entry of this Order.

**IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED THAT:**

1.       **Relief Granted**.  The relief requested in the Sale Motion is granted as set forth herein.

2.       **Objections Overruled**.  All objections and responses to the Sale Motion, this Order or the relief granted herein that have not been overruled, withdrawn, waived, settled or otherwise resolved, are hereby overruled and denied on the merits with prejudice.

3.       **Notice**.  Notice of the Sale Motion, including without limitation, the transactions set forth in the APA and the assumption and assignment of the Assigned Contracts, the Auction, the Sale Hearing and the Transactions was fair and reasonable under the circumstances and complied with Sections 102(1), 363 and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9006 and 9007 and Local Rules 6004-1 and 6004-2 and no further notice is necessary or required.

4.       **Approval of Bidding Procedures**.  The Bidding Procedures utilized by the Debtors related to the Transactions are hereby approved and ratified and were appropriate under the circumstances in order to maximize the value obtained from the Transactions for the benefit of the estates.

5.       **Approval of Sale Transactions**.  The APA and the Transactions are hereby approved and authorized in all respects, and the Debtors are hereby authorized and empowered to enter into, and to perform their obligations under the APA and to execute and perform such agreements or documents, and take such other actions as are necessary or desirable to effectuate the terms of the APA.

6.       This Order shall be binding in all respects upon the Debtors, their estates, all creditors of, and holders of equity interests in, the Debtors, any holders of Liens or other interests in, against or on all or any portion of the Assets (whether known or unknown), the

Purchaser and all successors and assigns of the Purchaser, the Assets and any trustees, if any, subsequently appointed in the Debtors' Chapter 11 cases or upon a conversion to Chapter 7 under the Bankruptcy Code of the Debtors' cases.  This Order and the APA shall inure to the benefit of the Debtors, their estates and creditors, the Purchaser and the respective successors and assigns of each of the foregoing.

7.    **Good Faith Purchaser**.  The Purchaser is a good faith purchaser of the Assets and is hereby granted and is entitled to all of the protections provided to a good faith purchaser under Section 363(m) of the Bankruptcy Code.  Pursuant to Section 363(m) of the Bankruptcy Code, if any or all of the provisions of this Order are hereafter reversed, modified or vacated by a subsequent order of the Bankruptcy Court or any other court, such reversal, modification or vacatur shall not affect the validity and enforceability of any sale, transfer or assignment under the APA or obligation or right granted pursuant to the terms of this Order (unless stayed pending appeal prior to the Closing Date) and notwithstanding any reversal, modification or vacatur, any sale, transfer or assignment shall be governed in all respects by the original provisions of this Order or the APA, as the case may be.

8.    **Section 363(n) of the Bankruptcy Code**.  The sale approved by this Order is not subject to avoidance or any recovery or damages pursuant to Section 363(n) of the Bankruptcy Code.

9.    **Authorization of Performance by the Debtors**.  The Debtors are authorized to fully perform under, consummate and implement the terms of the APA together with any and all additional instruments and documents that may be reasonably necessary or desirable to implement and effectuate the terms of the APA, this Order and the Transactions, including, without limitation, deeds, assignments, stock powers, transfers of membership interests and other instruments of transfer and to take all further actions as may reasonably be requested by

the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser, or reducing to possession any or all of the Assets, as may be necessary or appropriate to the performance of the Debtors' obligations as contemplated by the APA, without any further corporate action or orders of the Bankruptcy Court.

10.     The Debtors are authorized and empowered to cause to be filed with the secretary of state of any state or other applicable officials of any applicable governmental units, any and all certificates, agreements or amendments necessary or appropriate to effectuate the transactions contemplated by the APA, any related agreements and this Order, including amended and restated certificates or articles of incorporation and by-laws or certificates or articles of amendment and all such other actions, filings or recordings as may be required under appropriate provisions of the applicable laws of all applicable governmental units or as any of the officers of the Debtors may determine are necessary or appropriate.

11.     **Valid Transfer Free and Clear**.  Effective as of the Closing, the sale and assignment of the Assets and the Assigned Contracts by the Debtors to the Purchaser shall constitute a legal, valid and effective transfer of the Assets and the Assigned Contracts notwithstanding any requirement for approval or consent by any person, and will vest the Purchaser with all right, title and interest of the Debtors in and to the Assets, free and clear of all Liens, Claims, encumbrances and other interests other than those assumed under the APA, pursuant to Section 363(f) of the Bankruptcy Code.  The sale and assignment of the Assets and the assignment of the Assigned Contracts to the Purchaser vests the Purchaser with all right, title and interest of the Debtors to the Assets free and clear of any and all Liens, Excluded Liabilities and other liabilities of any kind or nature whatsoever, whether imposed by agreement, understanding, law, equity or otherwise, with all such Liens, Claims, encumbrances and other interests to attach only to the net proceeds of the sale and assignment of the Assets with the same priority, validity, force and effect as they now have in or against the Assets.  The Sale Motion shall be deemed to provide sufficient notice as to the sale and assignment of the

Assets free and clear of all Liens and Excluded Liabilities in accordance with the Bankruptcy Code, Bankruptcy Rules and Local Rules.  Following the Closing, no holder of any Lien on the Assets may interfere with the Purchaser's use and enjoyment of the Assets based on or related to such Lien or any actions that the Debtors may take in their chapter 11 cases.

12.    Unless otherwise expressly included in the definition of "Assumed Liabilities" in the APA, Purchaser shall not be responsible for any Lien, Claim or encumbrances including in respect of the following: (a) any labor or employment agreements; (b) any mortgages, deeds of trust and security interests; (c) any pension, welfare, compensation or other employee benefit plans, agreements, practices and programs, including, without limitation, any pension plan of the Debtors; (d) any other employee, worker's compensation, occupational disease or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the WARN Act, (vii) the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act, (ix) the Family Medical Leave Act, (x) the Labor Management Relations Act, (xi) the Multiemployer Pension Protection Act, (xii) the Pension Protection Act, (xiii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (xiv) the Comprehensive Environmental Response Compensation and Liability Act, (xv) state discrimination laws, (xvi) state unemployment compensation laws or any other similar state laws, or (xvii) any other state or federal benefits or claims relating to any employment with the Debtors or any of its respective predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended or any state or local tax laws; (g) any escheat or unclaimed property laws; (h) to the extent not included in the foregoing, any of the Excluded Liabilities under the APA; and (i) any theories of successor or transferee liability.

13.    The provisions of this Order authorizing the sale and assignment of the Assets free and clear of Liens and the Excluded Liabilities, shall be self-executing, and neither the Debtors nor the Purchaser shall be required to execute or file releases, termination statements, assignments, consents or other instruments in order to effectuate, consummate and implement the provisions of this Order.

14.    **The Debtors Shall Not Retain Liability for Assigned Contracts and Assumed Liabilities**.    Notwithstanding anything to the contrary in this Order, the APA or otherwise, effective on the Closing, (a) the assumption of the Assigned Contracts and the Assumed Liabilities by the Purchaser constitutes a legal, valid, effective, complete and absolute sale, conveyance and transfer from the Debtors to the Purchaser of any and all Liabilities relating to, in connection with or arising under the Assigned Contracts and Assumed Liabilities and (b) the Debtors shall have no liability to Purchaser, any governmental agency, surety or any other person for any Liabilities with respect to the Assigned Contracts and such Assumed Liabilities.

15.    Further, it is the Parties' express intention that the Transactions be, and be treated for all purposes, as an absolute sale, conveyance and transfer of all Liabilities relating to, in connection with or arising under the Assigned Contracts and Assumed Liabilities.

16.    **Prohibition of Actions Against Purchaser**.    Except for the Assumed Liabilities, Purchaser shall not have any liability or other obligation of the Debtors arising under or related to any of the Assets or other Assumed Liabilities expressly identified in the APA, including, but not limited to, any liability for any Lien, Claim or encumbrances whether known or unknown as of the Closing, now existing or hereafter arising, whether fixed or contingent, with respect to the Debtors or any obligations of the Debtors, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, in connection with or in any way relating to the operation of the Debtors' business prior to the Closing Date.

17.    Except with respect to the Assumed Liabilities, or as otherwise expressly provided for in this Order or the APA, all persons and entities, including, but not limited to, all debt holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants and other creditors, holding or asserting Liens, Claims or encumbrances or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the Assets, the operation of the Debtors' businesses prior to the Closing Date or the transfer of the Assets to the Purchaser in accordance with the APA, hereby are forever barred, estopped and permanently enjoined from asserting against Purchaser, its successors or assigns, its property or the Assets, such persons' or entities' Lien, Claim, encumbrance or other interests in and to the Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against Purchaser, its successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against Purchaser, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Lien, Claim, Encumbrance or Interest against Purchaser, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due Purchaser or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Assets or conduct any of the businesses operated with the Assets.

18.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Assets to Purchaser in accordance with the terms of the APA, and this Order.

19.     The Purchaser has given substantial consideration under the APA for the benefit of the Debtors, their estates, and creditors.  The consideration given by the Purchaser shall constitute valid and valuable consideration for the releases of any potential Lien, Claim, Encumbrance or other interest pursuant to this Order, which releases shall be deemed to have been given in favor of Purchaser by all holders of Liens or Encumbrances against or Interests in, or Claims against any of the Debtors or any of the Assets, other than with respect to the Assumed Liabilities.  The consideration provided by Purchaser for the Assets under the APA is fair and reasonable and may not be avoided under section 363(n) of the Bankruptcy Code.

20.     **Direction to Creditors**.  On the Closing Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be reasonably necessary to release its Liens, Claims or encumbrances in the Assets, if any, as such Liens, Claims or encumbrances may otherwise exist.  If any person or entity that has filed financing statements, mortgages, mechanics liens, *lis pendens* or other documents, instruments, notices or agreements evidencing any Lien, Claim or encumbrance against or in the Assets shall not have delivered to the Debtors before the Closing, in proper form for filing and executed by the appropriate parties, termination statements, releases or instruments of satisfaction that the person or entity has with respect to the Assets, then with regard to the Assets, (a) the Debtors and/or the Purchaser are authorized to execute and file such termination statements, releases, instruments of satisfaction or other documents on behalf of the person or entity with respect to the Assets and (b) the Debtors and/or Purchaser are authorized to file, register or otherwise record a certified copy of this Order which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all Liens against the Assets.  This Order is

deemed to be in recordable form sufficient to be placed in the filing or recording system of each and every federal, state, local, tribal or foreign government agency, department or office.

21.    **Direction to Government Agencies**.  Each and every filing agent, filing officer, title agent, recording agency, governmental department, secretary of state, federal, state and local official, and any other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or insure any title in or to the Assets, is hereby authorized and directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA and this Order.  All such entities described above in this paragraph are authorized and specifically directed to strike all recorded Liens against the Assets from their records.

22.    **Direction to Surrender Possession and Control**.  All persons or entities, presently or on or after the Closing Date, in possession or control of some or all of the Assets are directed to surrender possession and control of the Assets to the Purchaser on the Closing Date or at such time thereafter as the Purchaser may request.

23.    **Licenses and Permits**.  To the extent provided in the APA and available under applicable law, the Purchaser shall be authorized, as of the Closing Date, to operate under any license, permit, registration and any other governmental authorization or approval of the Debtors with respect to the Assets and the Assigned Contracts, and all such licenses, permits, registrations and governmental authorizations and approvals are deemed to have been, and hereby are, directed to be transferred to the Purchaser as of the Closing Date.  To the extent any license or permit necessary for the operation of the business is determined not to be an executory contract assumable and assignable under Section 365 of the Bankruptcy Code, the Purchaser shall apply for and obtain any necessary license or permit promptly after the Closing Date, and such licenses or permits of the Debtors shall remain in place for the Purchaser's benefit until new licenses and permits are obtained.

24.    To the extent provided by Section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation of the Assets sold, transferred or conveyed to the Purchaser on account of the filing or pendency of these Chapter 11 cases or the consummation of the transactions contemplated by the APA.

25.    **No Successor Liability**.  The Purchaser and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent) are not and shall not, solely as result of the consummation of the Transactions contemplated by the APA or any other event occurring in the Chapter 11 cases, be (a) deemed a "successor" in any respect to the Debtors or their estates under any theory of law or equity, (b) deemed to have, *de facto* or otherwise, merged or consolidated with or into the Debtors or their estates, (c) deemed to have a common identity with the Debtors, (d) deemed to have a continuity of enterprise with the Debtors or (e) deemed to be a continuation or substantial continuation of the Debtors or any enterprise of the Debtors.  The Purchaser shall not assume, nor be deemed to assume or in any way be responsible for any liability or obligation of any of the Debtors and/or their estates including, but not limited to, any Excluded Liabilities, any bulk sales law, successor liability, liability or responsibility for any claim against the Debtors or against an insider of the Debtors, or similar liability except as may otherwise expressly provided in the APA, and the Sale Motion contains sufficient notice of such limitation in accordance with applicable law.  Except for the Assumed Liabilities, the transfer of the Assets and the Assigned Contracts to the Purchaser under the APA shall not result in (a) the Purchaser and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent) or the Assets, having any liability or responsibility for any claim against the Debtors or against an insider of the Debtors (including, without limitation, Excluded Liabilities), (b) the Purchaser and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent) or the Assets, having any liability whatsoever with

respect to or be required to satisfy in any manner, whether at law or in equity, whether by payment, setoff or otherwise, directly or indirectly, any Liens or Excluded Liability or (c) the Purchaser and its affiliates and their respective predecessors, successors, assigns, members, partners, officers, directors, principals and shareholders (or equivalent) or the Assets, having any liability or responsibility to the Debtors or any other person or entity except as is expressly set forth in the APA.

26.     **No Bulk Sales; No Brokers**.  No bulk sales law or any similar law of any state or other jurisdiction shall apply in any way to the Transactions.  No brokers were involved in consummating the Transactions, and no brokers' commissions are due to any person or entity in connection with the Transactions.  The Purchaser is not and will not become obligated to pay any fee or commission or like payment to any broker, finder or financial advisor as a result of the consummation of the Transactions based upon any arrangement made by or on behalf of the Debtors.

27.     **Assumption and Assignment of Assigned Contracts**.  Under Sections 105(a), 363 and 365 of the Bankruptcy Code, and subject to and conditioned upon the closing of the Transactions, the Debtors' assumption and assignment of the Assigned Contracts to the Purchaser free and clear of all Liens, claims, encumbrances and Excluded Liabilities pursuant to the terms set forth in the APA, as modified by the terms of any amendments reached directly by the Purchaser with the respective counterparty, is hereby approved, and the requirements of Sections 365(b)(1) and 365(f)(2) (including to the extent, if any, modified by Section 365(b)(3)) of the Bankruptcy Code with respect thereto are hereby deemed satisfied.  Other than as set forth in paragraph 28 hereof, each counterparty to the Assigned Contracts is hereby forever barred, estopped and permanently enjoined from raising or asserting against the Debtors or the Purchaser, or the property of any of them, any assignment fee, default, breach, claim, pecuniary

loss, liability or obligation (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or noncontingent, known or unknown, liquidated or unliquidated senior or subordinate) arising under or out of, in connection with, or in any way related to the Assigned Contracts existing as of the Closing Date or arising by reason of the Closing.

28.    **Cure Costs**.  All defaults or other obligations shall be deemed cured by the payment or other satisfaction of the cure amounts, if any, associated with the Assigned Contracts (the "***Cure Costs***").  Payment of the Cure Costs pursuant to the APA is hereby authorized.    To the extent any objections to proposed cure amounts were filed (a "***Cure Objection***"), there will be a separate hearing to resolve such Cure Objections, if any such objection has not been resolved as of the date hereof.    To the extent the closing of the Transactions has occurred prior to the resolution of any outstanding Cure Objections, the applicable Assigned Contracts will be conditionally assumed and assigned as of the date of the closing of the Transactions, subject to the consent of the Purchaser, pending a resolution of the objection after notice and a hearing.  If a Cure Objection is not resolved to the satisfaction of the Purchaser, the Purchaser may determine that such Assigned Contract should be rejected and not assigned, in which case the Purchaser will not be responsible for any Cure Costs in respect of such contract.  Consistent with the APA, until the Closing of the Transactions, the Purchaser may add or remove any contract or lease from the schedule of Assigned Contracts under the APA for any reason, and if a contract or lease is not an Assigned Contract under the APA, the Purchaser is not assuming any liabilities, including any prepetition or post-petition trade payables or Cure Costs, associated with such contract or lease, and all such liabilities are Excluded Liabilities under the relevant APA.

29.    **Adequate Assurance**.  All objections relating to adequate assurance of future performance of the Purchaser (an "*Adequate Assurance Objection*") have been overruled, resolved or withdrawn.   The Purchaser has provided adequate assurance of its future performance under the relevant Assigned Contracts within the meaning of Sections 365(b)(1) (C) and 365(f)(2)(B) of the Bankruptcy Code (including to the extent, if any, modified by Section 365(b)(3)).   All other requirements and conditions (other than the resolution of any remaining Cure Objections (as set forth in paragraph 28 hereof)) under Sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Purchaser of the Assigned Contracts have been satisfied.

30.    **Anti-Assignment Provisions Unenforceable**.  No sections or provisions of the Assigned Contracts that purport to (a) prohibit, restrict or condition the Debtors' assignment of the Assigned Contracts, including, but not limited to, the conditioning of such assignment on the consent of the nondebtor party to such Assigned Contracts, (b) authorize the termination, cancellation or modification of the Assigned Contracts based on the filing of a bankruptcy case, the financial condition of the Debtors or similar circumstances, (c) declare a breach or default as a result of a change in control in respect of the Debtors, or (d) provide for additional payments, penalties, conditions, renewals, extensions, charges or other financial accommodations in favor of the nondebtor third party to the Assigned Contracts, or modification of any term or condition upon the assignment of an Assigned Contract or the occurrence of the conditions set forth in subsection (b) above, shall have any force or effect, and such provisions constitute unenforceable anti-assignment provisions under Section 365(f) and/or are otherwise unenforceable under Section 365(e) of the Bankruptcy Code.  The entry of this Order constitutes the consent of the nondebtor parties to the Assigned Contracts to the assumption and assignment

of the Assigned Contracts.  Each of the Assigned Contracts shall remain in full force and effect, without existing default(s), subject only to payment by the Purchaser of the Cure Cost, if any, payable with respect to such Assigned Contract.

31.     **No Fees for Assumption and Assignment**.  There shall be no rent accelerations, assignment fees, increases or any other fees charged to the Purchaser, its successors or assigns or the Debtors as a result of the assumption and assignment of the Assigned Contracts.

32.     **Notice of Assumption and Assignment**.  The Debtors have served all of the nondebtor counterparties to the Assigned Contracts identified on the lists the Debtors have filed with the Bankruptcy Court, by overnight mail, an Assumption/Assignment Notice that included (a) the title of the Assigned Contract, (b) the name of the counterparty to the Assigned Contract, (c) any applicable Cure Costs, and (d) the deadline by which any such Assigned Contract counterparty must file an objection (collectively with a Cure Objection and an Adequate Assurance Objection, an "**Assumption and Assignment Objection**") to the proposed assumption and assignment.  No other or further notice is required.

33.     **Objections to Assumption and Assignment**.  Except as provided herein, all Assumption and Assignment Objections have been overruled, withdrawn, waived, settled or otherwise resolved.  Any Cure Objection that has not been resolved by the parties may be heard at a later date as set by the Bankruptcy Court.  The pendency of a dispute relating to a particular Assigned Contract shall not prevent or delay the assumption and assignment of any other Assigned Contract or the Closing.

34.     Any nondebtor counterparty to the Assigned Contract designated to be assumed and assigned to the Purchaser who has not filed an Assumption and Assignment Objection by the deadline as set forth in the Assumption/Assignment Notice shall hereafter be barred from

objecting or asserting monetary or non-monetary defaults with respect to any such Assigned Contract, and such Assigned Contract shall be deemed assumed by the Debtors and assigned to the Purchaser on the Closing Date.

35.    **Direction to Counterparties of Assigned Contracts**.  All counterparties to the Assigned Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Purchaser, and shall not charge the Purchaser for, any instruments, applications, consents or other documents that may be required or requested by any public or quasi-public authority or other party or entity to effectuate the applicable transfers in connection with the Transactions.

36.    **Section 1146 Exemption**.  Pursuant to Section 1146(a) of the Bankruptcy Code, the transfer of the Assets pursuant to the APA and this Order and any transaction arising or related thereto or contemplated thereby shall not be subject to any document recording tax, stamp tax, conveyance fee, intangible or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, sales tax, Uniform Commercial Code filing or recording fee, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents or Governmental Units shall be, and hereby are, directed to forego the collection of any such tax or governmental assessment and to accept for filing and recording any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

37.    **Amendments**.  Subject to the terms of the APA, the APA and any related agreements may be waived, modified, amended or supplemented by agreement of the Debtors and the Purchaser, without further action or order of the Bankruptcy Court; *provided*, *however*, that any such waiver, modification, amendment or supplement does not have a material and

adverse effect on the Debtors and their estates. The Debtors and the Purchaser are expressly authorized, without further order of the Bankruptcy Court, to execute an amendment to the APA to provide for the Closing to occur on one or more Closing Dates. Any material modification, amendment or supplement to the APA that has an adverse effect on the Debtors and their estates must be approved by order of the Bankruptcy Court following a motion on notice to all interested parties.

38. **Failure to Specify Provisions**. The failure to specifically include any particular provisions of the APA (including any amendments thereof authorized hereby) or any related agreements in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court, the Debtors and the Purchaser that the APA and any related agreements are authorized and approved in their entirety with such amendments thereto as may be made by the parties in accordance with this Order. Likewise, all of the provisions of this Order are nonseverable and mutually dependent.

39. **Binding Order**. This Order and the APA shall be binding upon and govern the acts of all persons and entities, including without limitation, the Debtors and the Purchaser, their respective successors and permitted assigns, including, without limitation, any Chapter 11 trustee hereinafter appointed for the Debtors' estates or any trustee appointed in a Chapter 7 case if any of the Debtors' cases are converted from Chapter 11, all creditors of any Debtor (whether known or unknown), all nondebtor parties to any Assigned Contracts, filing agents, filing officers, title agents, recording agencies, governmental departments, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office or contract, to accept, file, register or otherwise record or release any documents or instruments or who may be required to report or insure any title in

or to the Assets.  The APA and Transactions shall not be subject to rejection or avoidance under any circumstances.  This Order and the APA shall inure to the benefit of the Debtors, their estates, their creditors, the Purchaser and its respective successors and assigns.

40.     **Allocation of Consideration**.  Except as provided in the APA, all rights of the respective Debtors' estates with respect to the allocation of consideration received from the Purchaser in connection with the Transactions (including, without limitation, the value of the assumption of the Assumed Liabilities) are expressly reserved for later determination by the Bankruptcy Court and, to the extent consideration is received by any Debtor that is determined to be allocable to another Debtor, the recipient Debtor shall be liable to such other Debtor for a claim with the status of an expense of administration in the case of the recipient Debtor under Section 503(b) of the Bankruptcy Code.

41.     **Subsequent Plan Provisions.** Nothing contained in any Chapter 11 plan confirmed in any of the Debtors' cases or any order confirming any such plan or in any other order in these Chapter 11 cases (including any order entered after any conversion of any of these cases to a case under Chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Order shall alter, conflict with, or derogate from, the provisions of the APA or this Order.

42.     **No Stay of Order**.  This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004 and 6006, this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing. Time is of the essence in closing the Transactions referenced herein, and the Debtors and the Purchaser intend to close the Transactions as soon as practicable.  Any party objecting to this

Order must exercise due diligence in filing an appeal, pursuing a stay and obtaining a stay prior to the Closing or risk its appeal being foreclosed as moot.

43.   **Lift of Automatic Stay**.   The automatic stay pursuant to Section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtors to the extent necessary, without further order of the Bankruptcy Court, to allow the Purchaser to deliver any notice provided for in the APA and allow the Purchaser to take any and all actions permitted under the APA, in each case in accordance with the terms and conditions thereof.

44.   **Retention of Jurisdiction**.   The Bankruptcy Court shall retain jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order and the APA, including all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith, in all respects, and (b) to decide any disputes concerning this Order and the APA, or the rights and duties of the parties hereunder or thereunder or any issues relating to the APA and this Order including, but not limited to, the interpretation of the terms, conditions and provisions hereof and thereof, the status, nature and extent of the Assets and any Assigned Contracts and all issues and disputes arising in connection with the relief authorized herein, inclusive of those concerning (x) the transfer of the assets free and clear of all Liens and (y) the absolute conveyance of the Assumed Liabilities and Assigned Contracts.

45.   **Further Assurances**.   From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the Transactions, including such actions as may be necessary to (a) vest in the Purchaser its right, title and interest, free and clear of all Liens, Claims, encumbrances and Excluded Liabilities, in and to

the Assets and the Assigned Contracts, and (b) perfect, confirm or record the vesting of such

Assets and Assigned Contracts in the Purchaser, free and clear of all Liens and Excluded

Liabilities.

46.    **Governing Terms**.  To the extent this Order is inconsistent with any prior order

or pleading in these Chapter 11 cases, the terms of this Order shall govern.  To the extent there

is any inconsistency with between the terms of this Order and the terms of the APA (including

all ancillary documents executed in connection therewith and any amendments thereto

authorized hereby), the terms of the APA, as amended, and such documents shall govern.


Dated:  Apr 17 2019
_____
        Alexandria, Virginia

/s/ Brian F. Kenney
_____
THE HONORABLE BRIAN F. KENNEY
UNITED STATES BANKRUPTCY JUDGE


WE ASK FOR THIS:

Entered on Docket:Apr 18 2019

*/s/ Kristen E. Burgers*
Kristen E. Burgers (VSB No. 67997)
HIRSCHLER
8270 Greensboro Drive, Suite 700
Tysons, Virginia 22102
Telephone:  (703) 584-8900
Facsimile:  (703) 584-8901
Email:  kburgers@hirschlerlaw.com

- and –

*/s/ Mark S. Lichtenstein*
Mark S. Lichtenstein (Admitted pro hac vice)
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:  (212) 223-4000
Facsimile:  (212) 223-4001
Email:  mlichtenstein@crowell.com

*Co-Counsel to the Debtors*

SEEN AND NO OBJECTION:


*/s/ Jeffrey Rothleder*
Christopher J. Giaimo (Admitted *Pro Hac Vice*)
Jeffrey Rothleder (VSB No. 91468)
Squire Patton Boggs (US) LLP
2550 M Street, NW
Washington, DC 20037
Telephone: (202) 457-6000
Facsimile: (202) 457-6315
Email: jeffrey.rothleder@squirepb.com
        christopher.giaimo@squirepb.com


## LOCAL RULE 9022-1(C) CERTIFICATION

I hereby certify that this form of order has been endorsed by and/or served upon all necessary parties pursuant to Local Bankruptcy Rule 9022-1(C).

*/s/ Kristen E. Burgers*
Kristen E. Burgers

**<u>Exhibit A</u>**

Real Property Description

See attached plat.



PLAT OF THE GREENTECH AUTOMOTIVE INC. PROPERTY
IN SECTION 20, TOWNSHIP 3 SOUTH, RANGE 10 WEST,
TUNICA COUNTY, MISSISSIPPI