**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

|  |  |  |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| GreenTech Automotive, Inc., <u>et al.</u>[1] | ) | Case No. 18-10651 |
| | ) | Jointly Administered |
| Debtors. | ) | |

## MODIFIED FOURTH AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION OF GREENTECH AUTOMOTIVE, INC. AND WM INDUSTRIES CORP.

Kristen E. Burgers (VSB No. 67997)
HIRSCHLER FLEISCHER
8270 Greensboro Drive, Suite 700
Tysons, Virginia 22102
Telephone:  (703) 584-8900
Facsimile:  (703) 584-8901
Email:  kburgers@hirschlerlaw.com

*Co-Counsel to the Debtors*

Mark S. Lichtenstein (admitted pro hac vice)
CROWELL &  MORING LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:  (212) 223-4000
Facsimile:  (212) 223-4001
Email:  mlichtenstein@crowell.com

*Co-Counsel to the Debtors*

August 26, 2019

---

[1] The Debtors in these jointly administered chapter 11 cases are GreenTech Automotive, Inc. (Case No. 18-10651), WM Industries Corp. (Case No. 18-10652), Gulf Coast Funds Management, LLC (Case No. 18-10653), American Immigration Center, LLC (Case No. 18-10654), GreenTech Automotive Capital A-3 GP, LLC (Case No. 18-10655), and GreenTech Automotive Partnership A-3, L.P. (Case No. 18-10656).

# ARTICLE I
## DEFINITIONS

1.1 **Scope of Definitions**. For purposes of this Plan, all capitalized terms not otherwise defined shall have the meanings ascribed to such term in Article I of this Plan. Any term used in this Plan that is not defined herein, but is defined in the Bankruptcy Code or the Bankruptcy Rules, shall have the meaning ascribed to such term in the Bankruptcy Code or the Bankruptcy Rules. The words "herein," "hereof," "hereunder," and other words of similar import refer to this Plan as a whole, not to any particular section, subsection or clause, unless the context requires otherwise. Whenever it appears appropriate from the context, each term stated in the singular or the plural includes the singular and the plural, and each pronoun stated in the masculine, feminine or neuter includes the masculine, feminine and the neuter.

1.2. **Definitions.**

**A-3 GP**: A Delaware limited liability company named GreenTech Automotive Capital A-3 GP, LLC, shall mean at any time the person designated as the general partner of the Partnership in accordance with the terms hereof, in such person's capacity as a general partner of the Partnership. After the Effective Date, the A-3 GP shall be owned and controlled by the Continuing Limited Partners as defined in the Amended and Restated A-3 LPA.

**A-3 LP**: A Delaware limited partnership named GreenTech Automotive Partnership A-3, L.P., the general partner of which is A-3 GP, and the limited partners of which are comprised of all tranche A-3 Investors and which advanced in the aggregate the sum of $44.5 million to GTA pursuant to a loan and security agreement and that certain Deed of Trust, Security Agreement, Assignment of Leases and Rents, Financing Statement and Fixture Filing dated March 12, 2012, and recorded in the land records of Tunica County, Mississippi on May 24, 2012. A-3 LP shall have Allowed Class 3 and Class 6 Claims in the aggregate amount of approximately $44.5 million, subject to the waiver of certain A-3 Investors of any distribution under the Plan on account of the pro rata share of distributions for the Class 3 and Class 6 Claims.

**A-3 Secured Claim**: Described in Article 4.1 below.

**A-3 LP Unsecured Claim**: Described in Article 4.1 below.

**A-3 LP Deed of Trust**: Described in the definition of "Mississippi Parcel," below.

**A-3 LP Secured Note**: Described in the definition of "Mississippi Parcel," below.

**A-1 Investors**: Certain investors who invested the sum of $500,000.00 each in GTA and which investment was converted, or pursuant to the terms of such investment, was convertible into common stock of GTA prior to the Petition Date. Each A-1 Investor shall be deemed to have an Allowed Class 10 Claim in the amount of $500,000.00.

**A-2 Investors**: Certain investors who invested the sum of $500,000.00 each in GTA and which investment was converted, or pursuant to the terms of such investment, was convertible into common stock of GTA prior to the Petition Date**.** Each A-2 Investor shall be deemed to have an Allowed Class 10 Claim in the amount of $500,000.00.

**A-3 Investors**: Holders of limited partnership interests in A-3 LP each such interest having been purchased for a purchase price of $500,000.00.

**A-4 Investors**:  Holders of preferred shares in GTA purchased for $500,000.00 each and which are subject to a redemption right.  Each A-4 Investor shall be deemed to have an Allowed Class 7 Claim in the amount of $500,000.00.

**Administrative Expense Claim Bar Date**:   The date by which any Administrative Expense Claim must be filed, which is the Effective Date.

**Administrative Expense Claim**:   A request for payment of any cost or expense of administration of the Cases allowed by the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code.

**Administrative Fee**:  The fee in the amount of $60,000.00 each of the A-1 through A-4 Investors paid to Gulf Coast Funds Management, LLC for its assistance in qualifying individual investors for the EB-5 visa program, all in connection with their investment.

**Allowed Claim**:  Any Claim (i)(a) for which a proof of claim has been timely Filed with the Bankruptcy Court by the applicable bar date; or (b) that is listed in the Schedules and not listed as disputed, contingent or unliquidated as to amount; and, in either case, as to which no objection to the allowance thereof has been Filed by thirty (30) days after the Effective Date or (ii) which has otherwise been allowed by a Final Order.  Unless otherwise specified in the Plan, an "Allowed Claim" shall not include: (i) untimely Filed Claims Administrative Expense Claims, or Professional Fee Claims; (ii) interest on the principal amount of an Allowed Claim from and after the Petition Date, (iii) any punitive damages, or (iv) Claims which are Assumed Liabilities. Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or disputed and for which no Proof of Claim has been Filed or is not otherwise Allowed pursuant to the Plan or any other Final Order, is not considered Allowed and shall be expunged without further notice to any party or Order of the Bankruptcy Court.

**Amended and Restated A-3 LPA**:  Second Amended and Restated Limited Partnership Agreement for the A-3 LP, which will govern the post-confirmation business activities of the A-3 LP, will be binding on all Partners of the A-3 LP and which will be approved by the Court pursuant to the Confirmation Order.  A copy of the Amended and Restated A-3 LPA is attached to the Disclosure Statement as Exhibit "B."

**APA**:  Asset Purchase Agreement dated April 8, 2019 pursuant to which the Purchased Assets are to be sold to Encore.

**Assets**:  Any and all right, title and interest of any of the Debtors in and to property of whatever type or nature.

**Avoidance Actions**:   Any and all actions, proceedings, accounts, controversies, agreements, promises, claims, and rights of each Debtor and its estate (collectively, the "**Causes of Action**") to avoid or recover a transfer of property of any of the Debtors' estates or an interest of any of the Debtors in property, including, without limitation, actions arising under Sections 506, 510, 541, 542, 544, 545, 547, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal, state, or common law, including fraudulent transfers, whether or not litigation has been commenced with respect to such Causes of Action as of the Effective Date.

**Bankruptcy Code**:  Title 11 of the United States Code, as in effect on the Petition Date and as thereafter amended, if such amendments are made applicable to the Cases.

**Bankruptcy Court**:  The United States Bankruptcy Court for the Eastern District of Virginia, or in the event such court ceases to exercise jurisdiction over any Case, such court or adjunct thereof that exercises jurisdiction over such Case in lieu of the United States Bankruptcy Court for the Eastern District of Virginia.

**Bankruptcy Rules**:  The Federal Rules of Bankruptcy Procedure pursuant to Title 28 of the United States Code, 28 U.S.C. §§ 2075, as they have been or may hereafter be amended.

**Business**:  GTA's activities in seeking to manufacture and distribute electric vehicles.

**Business Day**:  Any day except a Saturday, Sunday or any day on which commercial banks in the Commonwealth of Virginia are authorized or required by applicable law to close.

**Case**:  With respect to each Debtor, the Chapter 11 case initiated by such Debtor's Filing on the Petition Date of a voluntary petition for relief in the Bankruptcy Court under Chapter 11 of the Bankruptcy Code (collectively, the "**Cases**").  The Cases are being jointly administered in the Bankruptcy Court under the lead Bankruptcy Case 18-10651-BFK pursuant to the Order Pursuant to Federal Rule of Bankruptcy Procedure 1015 Directing Joint Administration [Docket No. 3], entered by the Bankruptcy Court on March 9, 2018.

**Cash**:  Legal tender of the United States of America and equivalents thereof.

**Causes of Action**:   All actions, causes of action (including Avoidance Actions), liabilities, obligations, rights, suits, debts, damages, judgments, remedies, demands, setoffs, defenses, recoupments, crossclaims, counterclaims, third-party claims, indemnity claims, contribution claims or any other claims whatsoever, in each case held by the Debtors, whether disputed or undisputed, suspected or unsuspected, foreseen or unforeseen, direct or indirect, choate or inchoate, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of the Chapter 11 Cases, including through the Effective Date.

**Claim**:  A claim, as defined in section 101(5) of the Bankruptcy Code, against one of the Debtors (or all or some of them) whether or not asserted or Allowed.

**Claims Objection Bar Date**:  A date which is thirty (30) days after the Confirmation Date.

**Class**:  A category of Claims or Interests designated pursuant to the Plan.

**Class Claim/Interest**:  The specific Class into which Allowed Claims or Allowed Interests are classified pursuant to the Plan.

**Confirmation**:  Entry by the Bankruptcy Court of the Confirmation Order.

**Confirmation Date**:  The date upon which the Confirmation Order is entered by the Bankruptcy Court.

**Confirmation Order**:  The Order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, which shall include, *inter alia*, provisions, pursuant to Sections 105, 363, 365 and 1123 of the Bankruptcy Code (i) authorizing sale of the Purchased Assets of the Debtors free and clear of all liens, claims and encumbrances pursuant to the APA but excepting those liens, claims and encumbrances preserved or created under this Plan, all of which shall attach, and continue to attach, to the Purchased Assets, (ii) approving the APA, (iii)

authorizing and directing the assumption and assignment of certain executory contracts, and (iv) waiving the fourteen-day stay under Bankruptcy Rules 6004(h) and 6006(d).

**Creditor**:  Holder of a Claim.

**Debtor**:  Individually, GTA and WMIC, each of which is a Debtor in its Case (collectively, the "**Debtors**").

**Disallowed**:  A Claim or any portion thereof that is disallowed by a Final Order of the Bankruptcy Court or other court of competent jurisdiction.

**Disclosure Statement**: The Disclosure Statement dated as of April 24, 2019, submitted in connection with Debtors' Fourth Amended Joint Chapter 11 Plan of Liquidation, as it may be amended, modified or supplemented from time to time.

**Disputed Claim**:  Any Claim, (i) proof of which has been Filed to which an objection to the allowance thereof has been Filed prior to the Claims Objection Bar Date and such objection has not been either (a) determined by a Final Order or (b) been settled by the parties under a settlement approved by Final Order of the Bankruptcy Court pursuant to Bankruptcy Rule 9019; or (ii) which has not been otherwise allowed by the Bankruptcy Court.

**Disputed Judgment Creditors**:  Certain Investors who obtained a judgment on August 2, 2017, in the Circuit Court for Fairfax County, Virginia, against Gulf Coast Funds Management, LLC, A-3 LP, GreenTech Automotive Capital A-3 GP, LLC and GTA in the amount of $6,720,000.00, plus interest, costs, and fees.

**Distribution**:  The Debtors' distribution of the Debtors' Cash to the Record Holders of Allowed Claims, as set forth in sections 6.2, 6.3, 7.1, and 7.2 of the Plan.

**Distribution Waiving A-3 Investors**:  Certain A-3 investors, which are shareholders in Encore, who have agreed to waive any distribution on account of their pro rata distribution in Classes 3 and 6 of the Plan.

**Distribution Waiving A-4 Investors**:  Certain A-4 investors, which are shareholders in Encore, who have agreed to waive any distribution on amount of their pro rata distribution as Class 7 Claimants.

**Docket**:  The official record of the Cases as contained in *In re Greentech Automotive, Inc., et al.*, Case No. 18-10651, available in the Office of the Clerk for the Bankruptcy Court and at https://ecf.edva.uscourts.gov/.

**EB-5**:  Employment-Based Fifth Preference Immigration program, administered through the United States Citizenship and Immigration Services, which offers immigrant investors the opportunity to qualify for permanent U.S. residency by investing specified amounts in certain U.S. job creating initiatives in economically-challenged localities in the United States.

**Effective Date**:  Defined in Section 6.1 of the Plan.

**Encore**:  Encore Wealth Investments Limited, a private equity firm located in the British Virgin Islands, which, pursuant to the Sale Order and the APA, will acquire substantially all of the Assets of the Debtors.

**Estate**:  Means the bankruptcy estate of either GTA or WMIC, as the context requires, prior to their substantive consolidation pursuant to this Plan, and following their substantive

consolidation pursuant to this Plan, the combined bankruptcy estates of the Debtors all as defined by Section 541 of the Bankruptcy Code.

**File, Filed or Filing**:  File, filed or filing with the Bankruptcy Court or its authorized designee in the Cases.

**Final Decree**:  As to each Case, the Order entered pursuant to Section 350 of the Bankruptcy Code, Bankruptcy Rule 3022, and Local Rule 5009-1 closing such Case.

**Final Order**:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Case or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely Filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, Local Bankruptcy Rules, or applicable state court rules of civil procedure, may be Filed with respect to such order, shall not cause such order not to be a Final Order.

**General Unsecured Claim**:  Any Claim against a Debtor which is not a Secured Claim, an Administrative Expense Claim, a Professional Fee Claim, a Priority Claim, a Priority Tax Claim, or an Intercompany Claim and shall not include Claims that are disallowed or released, whether by operation of law or pursuant to order of the Bankruptcy Court, written release or settlement, the provisions of the Plan or otherwise.

**GTA**:  GreenTech Automotive, Inc., one of the administratively consolidated debtors herein.

**GCFM**:  A Louisiana limited liability company named Gulf Coast Funds Management, LLC, which is a designated regional center in the Immigrant Investor Program under the U.S. Department of Homeland Security's U.S. Citizenship and Immigration Services.

**Holder**:  The Person that is the owner of record of a Claim or Interest, as applicable.

**Impaired**:  With respect to any Class of Claims or Interests, the Claims or Interests in such Class that are impaired within the meaning of Section 1124 of the Bankruptcy Code.

**Intercompany Claim**:  Any Claim by one Debtor against the other Debtor.

**Interest**:  Either (i) the legal, equitable, contractual or other rights of any Person with respect to the preferred or common stock, or any other equity interest in any of the Debtors, including any other interest in or right to convert into such equity interest or (ii) the legal, equitable, contractual or other right of any Person to acquire or receive any of the foregoing.

**Interest Rate**:  The federal post-judgment interest rate in effect on the Petition Date, as set forth in 28 U.S.C. §1961.

**Investment**:  The investment of $500,000.00 by any Investor.

**Investor**:  Any A-1 Investor, A-2 Investor, A-3 Investor or A-4 Investor.

**Investor Claims**:  The Claims held by the A-1 and A-2 Investors.

**Investor Consent**: The consent form which shall be mailed to all A-3 and A-4 Investors for the purpose of allowing such Investor to opt-in to the third party releases in the Plan.

**JSAT**:  Jiangsu Saleen Automotive Technologies, Co., Ltd., a Chinese limited company.

**JSAT Interest**:  The minority interest in JSAT, received in exchange for the conveyance of GTA's rights in the MyCar intellectual property and certain engineering assistance to JSAT and which is held on behalf of GTA by a subsidiary of WMIC, organized under the laws of the Peoples' Republic of China.

**Liquidating Debtor**:  After confirmation of this Plan, the substantively consolidated Debtors on and after the Effective Date for certain limited purposed described herein, with GTA being the continuing entity.

**Litigation Claims**:  The litigation claims held by the Debtors under Chapter 5 of the Bankruptcy Code.

**Local Bankruptcy Rules**:  Those rules adopted by the United States Bankruptcy Court for the Eastern District of Virginia.

**Mississippi Parcel**:  That certain real estate located in Robinsonville, Tunica County, Mississippi, consisting of 99.5 acres, more or less, owned by GTA and on which GTA constructed and fitted-out a manufacturing facility for automobiles and on which the A-3 LP holds a first priority, properly recorded, deed of trust that encumbers such manufacturing facility and 79.9 acres of such property, more or less (the "**A-3 LP Deed of Trust**") and securing one or more promissory notes made, executed and delivered by GTA and payable to the A-3 LP in the original principal amount of no less than $44,500,000.00 (the "**A-3 LP Secured Note**").

**Order**:  An order or judgment of the Bankruptcy Court, or other court of competent jurisdiction, as entered on the docket in any Case or the docket of any other court of competent jurisdiction.

**Person**:  An individual, corporation, partnership, association, joint stock company, joint venture, limited liability company, limited liability partnership, trust, estate, unincorporated organization or other entity, or any government, governmental agency or any subdivision, department or other instrumentality thereof.

**Petition Date**:  February 26, 2018, the date on which the Debtors filed their respective petitions for relief in the Bankruptcy Court.

**Plan**:  The Debtors' Fourth Amended Joint Chapter 11 Plan of Liquidation dated as of April 23, 2019, as the same may be altered, amended, modified or supplemented from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

**Plan Administrator**.  Peter Huddleston shall serve as the Plan Administrator to initiate, coordinate and oversee the prosecution of Avoidance Actions, the prosecution of objections to claims, the distribution to Claimants, the administration of the post-confirmation estate, and, to the extent necessary, the wind-down and dissolution of all the Debtors and their affiliates.

**Plan Documents:**  The Plan Documents shall include, without limitation, the Amended A-3 LPA.

**Plan Supplement**:  The supplement to the Plan that will be filed by the Debtors no later than ten (10) days before the Confirmation Hearing and, which will include any documents listed in Section 10.1 of the Plan and such other documents the Debtors submit in support of the Plan.

**Priority Claim**:  A Claim that is entitled to priority under Section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim, and a Priority Tax Claim.

**Priority Tax Claim**:  A Claim that is entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**Professional**:  Any professional employed in the Cases pursuant to Sections 327, 328 or 1103 of the Bankruptcy Code or any Professional or other Person seeking compensation or reimbursement of expenses in connection with the Cases pursuant to Section 503(b)(4) of the Bankruptcy Code.

**Professional Fee Claim**:  A Claim of a Professional for compensation or reimbursement of costs and expenses relating to services incurred during the period from the Petition Date to the Effective Date.

**Professional Fee Claim Bar Date**:  The date that is thirty (30) days after the Effective Date.

**Pro Rata**:  A proportionate distribution on account of Allowed Claims, so that each holder of an Allowed Claim in a class receives a percentage of the total distribution to all holders of Allowed Claims in that class that is equal to the percentage that Allowed Claim holder's Claim represents of the total amount of Claims held by all Allowed Claim holders in that class.

**Purchaser**: Encore.

**Purchased Assets**:  The Assets (as defined in the Sale Order) that will be transferred to the Purchaser pursuant to the APA and the Sale Order and which are more specifically defined in Section 1(a) of the APA.

**Record Date**:  The Record Date shall be the date on which all record Holders of Claims or Interests shall be recognized, which shall be April 24, 2019.

**Record Holder**:  The Holder of an Interest or Claim as of the Record Date.

**Rejection Claim Bar Date**:  The date by which any Rejection Claim (as defined in Section 10.1 hereof) must be Filed and served in accordance with Section 10.2, which is the date which is thirty (30) days after the Confirmation Date..

**Remaining EB-5 Investor Claims**:  The Claims of A-1 Investors and A-2 Investors, in the approximate aggregate amount of $51 million.

**Returned Administrative Fees**:  Those Administrative Fees which the Debtors are using, with the consent of the Investor who paid such Administrative Fee, to support the Debtors' business operations and these Cases and for which the applicable Investors shall receive payment in addition to Distributions, on account of Allowed Class 6 and Class 7 Claims (if any) plus their other Allowed Claims regardless of classification.

**Returned Distribution**:  Any portion of any Distribution subsequently returned to the Debtor.

**Sale**:  The sale of substantially all of the Debtors' Assets, as further described in Section 3.5 of the Disclosure Statement and Sections 6.2 and 6.3 of the Plan.

**Sale Order**.  The Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets; (II) Authorizing the Assumption and Assignment of Executory Contracts and Unexpired Leases; (III) Approving Certain Deadlines and the Form, Manner and Sufficiency of Notice; and (IV) Granting Other Related Relief [Docket No. 557], which was entered by the Bankruptcy Court on April 18, 2019, and pursuant to which, the Debtors are authorized to sell and transfer the Assets to Encore free and clear of all liens, claims, encumbrances and interest.

**Sale Proceeds**:  The proceeds of the Sale of the Purchased Assets to Encore.

**Schedules**:  With respect to any Debtor, the Schedules of Assets and Liabilities Filed by such Debtor, as such Schedules may be amended from time to in accordance with Bankruptcy Rule 1009.

**Secured Claim**:  Either (i) a Claim that is secured by a lien on property in which the Debtors have an interest, which lien is valid, perfected and enforceable under applicable law or pursuant to a Final Order, or that is subject to setoff under Section 553 of the Bankruptcy Code, to the extent of the value of the Creditor's interest in such property or to the extent of the amount subject to setoff, as applicable, all as determined pursuant to Section 506(a) of the Bankruptcy Code; (ii) a Claim which is Allowed under the Plan as a Secured Claim; or (iii) a Claim secured by a lien on collateral to the extent of the value of such collateral as agreed to by the Holder of such Claim and the Debtors.

**State of Mississippi Claim**:  On June 28, 2018, the State of Mississippi filed a Proof of Claim asserting (i) a secured claim in the amount of $3,494,653.02 based on security agreement dated September 6, 2011 and that UCC-1 financing statement filed on March 2, 2012 with the Secretary of State for the State of Mississippi and (ii) an unsecured claim in the amount of $6,000,000.00 based on a pending state court action in Mississippi seeking damages for the breach of the duty of good faith and fair dealing.

**Tunica County Secured Claim**:  The Secured Claim of the County of Tunica in Mississippi which is evidenced by that certain Deed of Trust dated September 23, 2011 and recorded among the land records of Tunica County, Mississippi on September 26, 2011.

**Unclassified Claims**:  Claims which, pursuant to Section 1123(a)(1) of the Bankruptcy Code, shall not be placed into a Class.  Unclassified Claims include Administrative Expense Claims, Professional Fee Claims and Priority Tax Claims.

**Unimpaired**:  With respect to a Class of Claims or Interests, any Class that is unimpaired within the meaning of Section 1124 of the Bankruptcy Code.

**USD**:  United States Dollars.

**United States Trustee**:  The Office of the United States Trustee for Region 4, Eastern District of Virginia (Alexandria Division).

**Voting Classes**:  Classes 1, 2, 3, and 6 which are Impaired and entitled to vote on the Plan.

**WMIC**:  WM Industries, Corp., one of the administratively consolidated Debtors herein.

1.3 **Rules of Interpretation**:  Unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan. The words "herein" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan. Captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan. Except for the rule contained in Section 102(5) of the Bankruptcy Code, the rules of construction set forth in Section 102 of the Bankruptcy Code and in the Bankruptcy Rules shall apply to the Plan.

1.4 **Computation of Time**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise expressly provided, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.5 **Exhibits and Plan Documents**.  All Exhibits and Plan Documents are incorporated into and are a part of the Plan as if set forth in full herein.

## ARTICLE II
## SUBSTANTIVE CONSOLIDATION

2.1 **Substantive Consolidation of Cases for Purposes of Distributions**. The Plan is predicated upon, and it is a condition precedent to confirmation of the Plan that the Court provides in the Confirmation Order for substantive consolidation of the Cases of the Debtors' estate into a single entity for purposes of this Plan and the distributions hereunder.  Pursuant to such Final Order, (i) all Assets and liabilities of the Debtors will be  consolidated, (ii) any obligations executed by any Debtor will be deemed to be one obligation of the Debtors, (iii) any Claims filed or to be filed in connection with any such obligation will be deemed one claim against the Debtors, and (iv) each Claim filed in the Case of any Debtor will be deemed filed against the consolidated assets of the Debtors, in accordance with the substantive consolidation of the Assets and liabilities of the Debtors; however, and notwithstanding the foregoing, such substantive consolidation shall not impair or diminish any valid security interest, lien or encumbrance in any Asset of either Debtor, such security interests, liens and encumbrances, being, and continuing to be, enforceable to the same extent as if there had been no substantive consolidation hereunder.  The cases of the jointly administered debtors other than the Debtors shall be dismissed upon entry of the order confirming this Plan.  A-3 LP, which is the subject of a stayed bankruptcy case, shall continue to exist after dismissal and be governed by the Amended and Restated A-3 LPA.

## ARTICLE III
## ADMINISTRATIVE EXPENSE CLAIMS,
## PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS

3.1 **Administrative Expense Claims**. Each holder of an Allowed Administrative Expense Claim shall be entitled to receive, in full satisfaction, settlement, release and discharge of and in exchange for such Allowed Administrative Expense Claim, (a) Cash equal to the

unpaid portion of such Allowed Administrative Expense Claim, or (b) such other treatment as to which the Debtors and such holder shall have agreed upon in writing; provided, however, that Allowed Administrative Expense Claims with respect to liabilities incurred by the Debtors in the ordinary course of business during the Cases shall, at the option of the Debtors, be paid in the ordinary course of business in accordance with the terms and conditions of any agreements relating thereto. Payment shall be made on the later of the Effective Date (or as soon as reasonably practicable thereafter) or within five (5) Business Days after such Claim becomes an Allowed Claim, or as soon thereafter as is reasonably practicable but not later than ninety (90) days thereafter.  All Disputed Administrative Expense Claims shall be reserved for in full on the Effective Date. Payment of Allowed Administrative Expense Claims on the Effective Date shall be made from the Debtor's Cash, whether from the Sale Proceeds or other available and permitted sources hereunder.

3.2    **Quarterly Fees**.  Until such time as the Cases are closed, dismissed or converted, the Plan Administrator, on behalf of the Liquidating Debtor, shall timely pay all quarterly fees due under 28 U.S.C. 1930(a)(6) and file quarterly disbursement reports with the United States Trustee.

3.3    **Bar Date for Administrative Expense Claims**.  Any Persons that failed to file a proof of Administrative Expense Claim or request for payment thereof on or before the Administrative Bar Date are forever barred from asserting such Claim against any of the Debtors, the Estates, the Liquidating Debtor, the Plan Administrator or their respective property, and the Holder thereof shall be enjoined from commencing or continuing any action, employment of process or act to collect, offset or recover such Administrative Expense Claim.

3.4    **Professional Fee Claims**.  All Persons seeking an award by the Bankruptcy Court of a Professional Fee Claim incurred through and including the Effective Date shall, unless otherwise ordered by the Bankruptcy Court, file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is no later than forty-five (45) days after the Effective Date.  Any and all applications for the final allowance of Professional Fee Claims shall be filed and served upon counsel to the Debtors, the United States Trustee, and all Persons on the Debtors' Bankruptcy Rule 2002 service list on or before the Professional Fee Claim Bar Date. A hearing on final allowance of Professional Fee Claims shall be held as soon as practicable after such applications for Professional Fee Claims are Filed.  Professional Fee Claims that are allowed by a Final Order of the Bankruptcy Court shall be paid by the Plan Administrator, on behalf of the Liquidating Debtor, from available Cash, including the Sale Proceeds.

3.5    **Post-Effective Date Professional Fee Claims**.  The Plan Administrator, on behalf of the Liquidating Debtor, shall pay, to the extent practicable, the reasonable fees and expenses of the professional persons employed by the Liquidating Debtor accrued or incurred after the Effective Date in the ordinary course of business without the necessity for any approval of the Bankruptcy Court. Such professional fees and expenses may be incurred in connection with the implementation and consummation of this Plan, the claims reconciliation process or any other matters as to which such professionals may be engaged by the Plan Administrator, on behalf of the Liquidating Debtor.

3.6 **Priority Tax Claims**. Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Liquidating Debtor, in full satisfaction, settlement, release and discharge of, and in exchange for such Allowed Priority Tax Claim: (i) Cash in an amount equal to such Allowed Priority Tax Claim on the later of the Effective Date and the first (1st) Business Day that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim or (ii) such other treatment as to which the Plan Administrator, on behalf of the Liquidating Debtor, and such Holder shall have agreed upon in writing.

## ARTICLE IV
## TREATMENT AND CLASSIFICATION OF
## CLAIMS AND INTERESTS; IMPAIRMENT

4.1 The categories of Claims and Interests listed below classify Claims and Interests for all purposes, including voting, Confirmation and Distribution pursuant hereto and pursuant to sections 1122 and 1123(a)(1) of the Bankruptcy Code. Capitalized terms used, but not otherwise defined, herein shall have the meanings set forth in section 1.2 of the Disclosure Statement.

| Class | Type | Status Under Plan | Treatment |
|---|---|---|---|
| 1 | Allowed Tunica County Secured Tax Claim | Impaired, Entitled to Vote | On or as soon as practicable after the Effective Date, but no later than ten (10) business days thereafter, in full satisfaction and release of the Allowed Tunica County Secured Tax Claim, Tunica County will receive cash from Sale Proceeds equal to the amount of its Allowed Secured Tax Claim. The Tunica County Secured Tax Claim shall be Allowed in the amount of $465,133.05. |
| 2 | Allowed Tunica County Secured Claim | Impaired, Entitled to Vote | On or as soon as practicable after the Effective Date, but no later than ten (10) business days thereafter, in full satisfaction and release of the Allowed Tunica County Secured Claim, Tunica County will receive Cash equal to the amount of its Allowed Secured Claim in the amount of $394,000.00. |
| 3 | Allowed A-3 LP Secured Claim | Impaired, Entitled to Vote | On or as soon as practicable after the Effective Date, in full satisfaction and release of its Claim, A-3 LP will receive Cash equal to the amount of its Allowed Secured Claim in the amount of $6,898,000.00, minus the pro rata portion of distributions attributable to the Distribution Waiving A-3 Investors, for a total distribution of $4,706,870.59. |
| 4 | Allowed Priority Non-Tax Claims | Unimpaired, Deemed to Accept | The Debtors assert that no amount is due on account of Class 4 Claims. To the extent such Claims exist, each Holder of an Allowed Priority Claim that has not been satisfied shall be paid by the Debtors in Cash in the full amount of such Allowed Priority Claim. Distributions on account of Allowed Priority on or as soon as practicable after the Effective Date or on the date on which such Allowed Priority Claim becomes due and payable pursuant to the terms thereof, the agreement upon which such Allowed Priority Claim is based, or any applicable Order of the Bankruptcy Court. |

| Class | Type | Status Under Plan | Treatment |
|---|---|---|---|
| 5 | Allowed Convenience Class Claims | Unimpaired, Deemed to Accept | This Class is comprised of the Holders of Allowed Unsecured Claims in an amount of less than $10,000.00 for each Claim.  On or as soon as practicable after the Effective Date, Holders of Allowed Claims in this Class shall receive full payment on account of their Claims in cash from the Sale Proceeds.  The Debtors estimate that the total amount of Convenience Class Claims is in the amount of $62,708.38. |
| 6 | Allowed Unsecured Claims | Impaired, Entitled to Vote | All creditors asserting unsecured claims that are not otherwise classified in the Plan, including the Class A-3 unsecured deficiency Claim, shall receive an aggregate distribution of _ in Cash, which is a dividend of approximately $1,474,467.71 in Cash, which is a dividend of approximately 5% on account of total Claims in the amount of approximately $30,354,990.31 minus the pro rata distribution allocable to the Distribution Waiving A-3 Investors.  Additionally, each non-consenting A-3 Investor shall receive his/her applicable Returned Administrative Fee. |
| 7 | Allowed Class A-4 Investors | Impaired Deemed to Reject | No recovery under the Plan other than the return to the non-consenting A-4 Investors their applicable Returned Administrative Fees. |
| 8 | Allowed Claims of Capital Wealth Holdings, Ltd. and American Theme Park Fund, LLC | Impaired, Deemed to Reject | No recovery under the Plan. |
| 9 | Inter-company Claims | Impaired, Deemed to Accept | Holders of Intercompany Claims will not receive any recovery on account of their Claims.  The Debtors, as Plan proponents, shall be deemed to have accepted the Plan. |
| 10 | Investor Claims | Impaired, Deemed to Reject | Holders of Investor Claims will not receive any recovery on account of their claims. |
| 11 | WMIC Interests | Impaired, Deemed to Reject | WMIC, as interest holder of 52% of GTA, will retain no ownership interests in the Debtors under the Plan, and such Interests shall be cancelled effective as of the Effective Date. |

4.2    **Elimination of Classes for Voting Purposes**  Any Class of Claims or Interests that is not populated as of the date of the commencement of the Confirmation Hearing by an Allowed Claim or an Allowed Interest, as applicable, or a Claim or Interest, as applicable, in such Class temporarily allowed under Bankruptcy Rule 3018, or as to which no vote is cast, shall be deemed deleted from the Plan for purposes of voting to accept or reject the Plan by any such Class under section 1129(a)(8) of the Bankruptcy Code.

4.3    **Unimpaired Classes of Claims and Interests**.  Classes 4 and 5 are unimpaired Classes under the Plan.

4.4     **Impaired Classes of Claims and Equity Interests**.  Classes 1, 2, 3, 6, 7, 8, 9, 10, and 11 are Impaired Classes under the Plan.

4.5     **Classes Deemed to Accept the Plan**.  Class 9 is an Impaired Class but deemed to accept the Plan.

4.6     **Classes Deemed to Reject the Plan**.  Classes 7, 8, 10 and 11 are impaired Classes but deemed to reject the Plan.

## ARTICLE V
## ACCEPTANCE OR REJECTION OF THE PLAN

5.1     **Presumed Acceptance by Unimpaired Classes**.  Claims in Class 4 and Class 5 are unimpaired by the Plan.  Under section 1126(f) of the Bankruptcy Code, the Holders of such Claims (if any) are conclusively presumed to accept the Plan, and the votes of such Holders (if any) will not be solicited.

5.2     **Classes Deemed to Reject Plan**.  Classes 7, 8 10 and 11 are deemed to reject the Plan.

5.3     **Confirmability and Severability of the Plan**.  The confirmation requirements of Section 1129 of the Bankruptcy Code must be satisfied with respect to the Plan.  The Debtors reserve the right to alter, amend, modify, revoke or withdraw the Plan prior to the Confirmation Hearing upon notice to creditors and other parties in interest.  A determination by the Bankruptcy Court that the Plan is not confirmable pursuant to Section 1129 of the Bankruptcy Code shall not limit or affect the Debtors' ability to modify the Plan to satisfy the confirmation requirements of 1129 of the Bankruptcy Code.

5.4     **Confirmation Pursuant to Section 1129(b) of the Bankruptcy Code**.  In the event that the Voting Classes do not vote to accept the Plan, the Debtors shall request the Bankruptcy Court to confirm the Plan under Section 1129(b) of the Bankruptcy Code.

## ARTICLE VI
## IMPLEMENTATION AND EXECUTION OF THE PLAN

6.1     **Effective Date**.  The Plan shall become effective on the date that is the first Business Day on which each condition set forth in Article XII of the Plan has been satisfied or waived as set forth therein (the "**Effective Date**").  If the Effective Date does not occur within the time specified in Section **12.2** of this Plan, the Debtors shall be in default under the terms of this Plan and all remedies in this Plan and the Plan Documents shall be available and may be exercised.

6.2     **Sale**.  On and after the closing of the Sale of the Purchased Assets to Encore the following shall occur:

6.2.1     **Sale Proceeds**.  Encore will transfer the Sale Proceeds to the Debtors in the amount of $7,600,000.00, subject to any adjustments provided for in the APA. The

Sale Proceeds shall be distributed in accordance with the Plan Distributions set forth in Article IV hereof.

6.2.2   **Waiver of Distribution**.  Twenty-seven A-3 Investors have agreed to waive their distributions under the Plan. Ten A-4 Investors agreed to waive their distributions under the Plan.

6.2.3   **Executory Contracts and Leases**. Any executory contracts or leases not assumed and assigned to Encore prior to the Confirmation Date shall be deemed as rejected as of the Confirmation Date.

6.2.4   **Employees**. The Debtors' employees other than those hired by Encore in connection with the Sale shall be terminated on or before the Effective Date.

6.3   **Implementation of the Plan**.  The Plan will be implemented through the Distribution of the Debtor's Cash.  Under the Plan, Debtors, through the Plan Administrator, shall make any required Effective Date payments to Holders of Allowed Class 1 Claims, Allowed Class 2 Claims, Allowed Class 3 Claims, Allowed Class 4 Claims, Allowed Class 5 Claims, Allowed Class 6 Claims and those Investors entitled to return of their Returned Administrative Fees within five (5) business days after the Effective Date.  The Liquidating Debtor shall make any necessary payments after the Effective Date.

6.4   **A-3 LP**.  A-3 LP, which is currently the subject of a stayed bankruptcy case pending in this Court, shall emerge from bankruptcy protection pursuant to the Plan and Confirmation Order and shall be governed by the Amended and Restated A-3 LPA.

6.5   **Transfer Taxes**.  Sales, transfers or other dispositions of Assets and property by the Debtors or the Liquidating Debtor, as applicable, including any transfers arising from the substantive consolidation of the Debtors under this Plan or the sale of the Purchased Assets pursuant to the APA, shall be entitled to the tax treatment provided by section 1146(a) of the Bankruptcy Code, and each recording office or other agent of any governmental unit or other taxing authority shall record any such documents of transfer or exchange without any further direction or order from the Bankruptcy Court, and without regard to any law imposing a stamp tax or other similar tax.

6.6   **Causes of Action and Other Assets not Transferred to Encore**.  All Claims and Causes of Action held by the Debtors shall vest in the Liquidating Debtor on the Effective Date and the Plan Administrator, on behalf of the Liquidating Debtor, shall have full power and authority to pursue such claims and causes of action for the benefit of the Debtors' creditors. The proceeds of all Claims and Causes of Action shall be deemed to be the Liquidating Debtor's Cash and shall be administered pursuant to the provisions of this Plan by the Plan Administrator. Settlements of Claims and Causes of Action shall not be subject to approval by the Bankruptcy Court except to the extent such claims are litigated in the Bankruptcy Court.  All Avoidance Actions (i) shall survive entry of the Confirmation Order, (ii) shall vest in the Liquidating Debtor, and (iii) shall not be barred or limited by estoppel, whether judicial, equitable, or otherwise.  For the avoidance of doubt, any claims or litigation against the Disputed Judgment Creditors and the State of Mississippi, whether in the context of claims objections or Avoidance

Actions, shall be the exclusive property of the Debtors or the Liquidating Debtor, as applicable. In consideration of the release provided in Section 13.9.1 of this Plan, GCFM, American Immigration Center LLC and A-3 GP (but not A-3 LP, which is a creditor of the Debtors) shall relinquish any assets or properties included in their respective bankruptcy estates that are not otherwise dealt with by this Plan or the Plan Documents to the Plan Administrator for distribution to creditors and parties in interest in accordance with the respective priorities of their allowed claims.

6.7   **Effectuating Documents**.   The Officers and Directors shall be authorized to execute, deliver, file or record such contracts, instruments, releases and other agreements or documents and take such other actions as may be necessary or appropriate to effectuate and implement the provisions of the Plan.

**ARTICLE VII**
**DISTRIBUTIONS**

7.1   **Distributions**.   The Plan Administrator, on behalf of the Liquidating Debtor, shall make all distributions on account of Allowed Unclassified Claims and other Cash payments required on the Effective Date.

7.2   **Delivery of Distributions**.   Distributions, as applicable, shall be made to Record Holders of any Allowed Claims: (i) at the address set forth on the proof of claim Filed by such Holder, (ii) at the address set forth in any written notices of address change Filed by such Holder, (iii) at the addresses reflected in the Schedules if neither a proof of claim nor a written notice of address change has been Filed, or (iv) if the Holder's address is not listed in the Schedules, at the last known address of such Holder according to the Debtors' books and records.

7.3   **Stop Payments; Minimum Distribution; Unclaimed Funds**.   The Plan Administrator, on behalf of the Liquidating Debtor, may stop payment on any distribution check that has not cleared the payer bank within ninety (90) days of the date of distribution of such check.  No distribution under the sum of $10.00 is required to be made by the Liquidating Debtor or Liquidating Trustee, as applicable.

7.4.   **United States Trustee Fees**.   Any fees payable under 28 U.S.C. § 1930 accruing after the Effective Date shall be timely paid by the Plan Administrator on behalf of Liquidating Debtor.  Upon the occurrence of the Effective Date, the Debtors shall be deemed to be a single entity for purposes of calculation of any fees payable under 28 U.S.C. § 1930.

7.5   **Distribution Reports**.   The Plan Administrator, on behalf of the Liquidating Debtor shall timely file with the Bankruptcy Court periodic distribution reports as required by the United States Trustee detailing the amounts distributed pursuant to this Plan and shall serve such reports on the Office of the United States Trustee.

7.6   **Disallowance of Certain Charges**.   All penalties, default interest or late fees that may have accrued on any Claim, other than a Secured Claim, prior to the Confirmation Date are disallowed.

**ARTICLE VIII**

## EFFECT OF CONFIRMATION

8.1     **Binding Effect**.  On and after the Effective Date, the provisions of the Plan shall bind any holder of a Claim against, or Interest in, a Debtor or the Liquidating Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan and whether or not such holder has accepted the Plan.

8.2     **Continuation of Injunctions and Stays**.  Except as otherwise provided in the Plan, Plan Documents, or the Confirmation Order, on and after the Effective Date, and provided that there is no default under the terms of the Plan and Plan Documents, all Persons who have held, currently hold or may hold a debt or Claim against a Debtor or the Liquidating Debtor or the Assets are permanently enjoined from taking any of the following actions on account of any such debt or Claim: (i) commencing or continuing in any manner any action or other proceeding against a Debtor, the Liquidating Debtor, the Plan Administrator, or their respective successors or assigns or Assets; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against a Debtor, the Liquidating Debtor, the Plan Administrator, or their respective successors or assigns or Assets; (iii) creating, perfecting or enforcing any lien or encumbrance against a Debtor, the Liquidating Debtor or their respective successors or assigns or Assets; and (iv) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the provisions of the Plan, the Plan Documents or the Confirmation Order.

8.3     **Post-Confirmation Governance**.  Zhifa Xu, Jinying Zhang, Peter Huddleston, Trey Agner and Xudong Chai currently sit on the board of directors of GTA (the "**Directors**"). Following the Effective Date, the Directors will serve in their same capacity as Directors of the Liquidating Debtor until the date of the entry of the Final Decree for the Liquidating Debtor. Such Final Decree, the Directors of the Liquidating Debtor shall be deemed to have resigned to the extent permissible under applicable law.  Nothing herein or in the Confirmation Order, including any releases, shall diminish or impair the enforceability of any policy of insurance that may cover claims against a Debtor or any other Person. Each of the matters provided for under this Plan involving the business structure of the Liquidating Debtor or action to be taken by or required of the Liquidating Debtor shall, as of the Effective Date, be deemed to have occurred and be effective as provided herein, and shall be authorized and approved in all respects without any requirement of further action by the members of the Board of the Liquidating Debtor.  Until dissolution, the Liquidating Debtor may operate under the name of GTA and pursuant to GTA's organizational documents and the laws of the State of Mississippi.

8.4     **Dissolution of the Liquidating Debtor**.  On the Effective Date or as soon thereafter as is reasonably practicable, the affairs of the Liquidating Debtor may be wound up and the Liquidating Debtor may be dissolved at any time without the need for any further action or approval; *provided*, *however*, that the entry of the Final Decree as to each Case shall effect such dissolution of the Liquidating Debtor to the extent permissible under applicable law.

## ARTICLE IX
## PROCEDURES FOR RESOLVING AND TREATING DISPUTED CLAIMS

9.1     **Objections to and Estimation of Claims and Interests; Prosecution of Disputed Claims and Interests**.   The Debtors or Liquidating Debtor, through the Plan Administrator, as applicable, may file with the Bankruptcy Court an objection to the allowance of any Claim or Interest, or any other appropriate motion or adversary proceeding with respect thereto.   All such objections will be litigated to Final Order; provided, however, that the Debtors or Liquidating Debtor, through the Plan Administrator, as applicable, may compromise and settle, withdraw or resolve by any other method approved by the Bankruptcy Court, any such objections to the allowance of such Claims or Interests.   Any objection to the allowance of a Claim not Filed by the Effective Date shall be deemed waived, and the Claim shall be an Allowed Claim in the amount set forth on the proof of claim Filed by the Holder of such Claim.

In addition, the Plan Administrator, on behalf of the Liquidating Debtor, may, at any time, request that the Bankruptcy Court estimate any Claim under Section 502(c) of the Bankruptcy Code, regardless of whether such Claim has been previously objected to or whether the Bankruptcy Court has ruled on any such objection.   In the event that the Bankruptcy Court estimates any Disputed Claim, that estimated amount will be limited to the purposes (such as voting on this Plan) determined by the Bankruptcy Court.   All of the aforementioned provisions with respect to objections to Claims or Interests and the claims estimation and resolution procedures, are cumulative and are not necessarily exclusive of one another.

9.2     **No Distributions Pending Allowance**.   Notwithstanding any other provision of the Plan to the contrary, no distribution shall be made to the holder of a Disputed Claim or Interest or the holder of a Claim or Interest that is the subject of a proceeding against it by the Liquidating Debtor unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest by Final Order.   While disputes regarding Claims or Interests are pending, the Liquidating Debtor shall hold for the benefit of each holder of a Disputed Claim or Interest an amount in Cash equal to the distributions that would have been made to the holder of such Disputed Claim or Interest if it were an Allowed Claim or Interest, or, if so determined by the Bankruptcy Court, such amount as estimated by the Bankruptcy Court under section 502(c) of the Bankruptcy Code, until such Claim or Interest becomes an Allowed Claim or Interest.

9.3     **Distributions After Allowance**.   As soon as practicable after a Disputed Claim or Interest becomes an Allowed Claim or Interest, the holder of such Allowed Claim or Interest shall receive all distributions to which such holder is then entitled under the Plan on account of such Allowed Claim or Interest.   Any Person who holds both an Allowed Claim or Interest and a Disputed Claim or Interest shall receive the appropriate distribution on the Allowed Claim or Interest, although no distribution will be made on the Disputed Claim or Interest until such dispute is resolved by settlement or Final Order.   After resolution of a dispute, any Cash previously reserved for such Disputed Claim or Interest and not paid in connection with the resolution thereof shall be distributed in accordance with the terms of this Plan.

## ARTICLE X
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

10.1     **Executory Contracts and Unexpired Leases**.   All executory contracts and unexpired leases of the Debtors that are not assumed and assigned, or rejected, either by motion or through the filing of an exhibit to the Plan Supplement which shall identify all contracts to be

assumed and the proposed Cure Amount for each such Contract, prior to the Confirmation Date, shall be deemed rejected.  Any Creditor asserting a claim for monetary damages as a result of the rejection of an executory contract or unexpired lease shall file a proof of claim substantially in the form of Official Form 10 with the clerk of the Bankruptcy Court ("**Rejection Claim**"), and serve it upon Debtors' counsel by overnight mail on or before the Rejection Claim Bar Date.

10.2    **Rejection Claims**.  If no Rejection Claims are filed, such Claims, if any, shall be forever disallowed and barred.  If one or more Rejection Claims are filed the Liquidating Debtor shall have sixty (60) days from the Confirmation Date to object thereto.

## ARTICLE XI
## MODIFICATION

11.1    **Pre-Confirmation Amendment**.  The Debtors reserve the right in accordance with the Bankruptcy Code to amend or modify this Plan prior to the Confirmation Date.  After the Debtors file a modification with the Court, this Plan, as modified, becomes the Plan.

11.2    **Post-Confirmation Modification**.  The Plan Administrator, on behalf of the Liquidating Debtor, may modify this Plan at any time after the Confirmation Date regardless of whether this Plan has been substantially consummated within the meaning of sections 1101(2) and 1127(b) of the Bankruptcy Code, if circumstances warrant such modification, if all required disclosure under section 1125 of the Bankruptcy Code has been given, and the Court, after notice and a hearing, confirms the Plan as modified.

11.3    **Correction of Errors; Inconsistencies**.  Before or after the Confirmation Date, or in the Confirmation Order, the Debtors may, with the approval of the Court, so long as it does not materially and adversely affect the interests of creditors and interest holders who have accepted this Plan, remedy any defect or omission, or reconcile any inconsistencies in this Plan or amend this Plan, in such a manner as may be necessary to carry out the purposes and the effect of this Plan without the necessity, if any, of re-soliciting acceptances.

## ARTICLE XII
## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

12.1    **Conditions to Confirmation**.  Confirmation of the Plan is subject to the following conditions: (i) the Bankruptcy Court having approved the Disclosure Statement by order entered on the docket in the Case of GTA; (ii) the presentment of a Confirmation Order, to the Bankruptcy Court in the Case for entry to confirm the Plan; (iii) delivery by Encore of the full amount of the Sales Proceeds to the Debtors in consummation of the Sale.

12.2.    **Conditions to the Effective Date**.  The Effective Date shall not occur and the Plan shall not be consummated unless and until each of the following conditions has been satisfied (or the Debtors have waived such conditions): (i) the Bankruptcy Court shall have entered the Confirmation Order (ii) the Confirmation Order shall have become a Final Order, (iii) the full amount of the Sales Proceeds shall have been paid by Encore to the Debtors prior to confirmation, as provided in Article 12.1 above, and (iv) the Effective Date must occur within sixty (60) days of the entry of the Confirmation Order.

12.3.   **Effect of Nonoccurrence of Conditions to the Effective Date**.  If each of the conditions to the Effective Date is not satisfied or duly waived, then upon motion by the Debtors, made only before the time that each of such conditions has been satisfied or duly waived and upon notice and an opportunity for hearing to such parties in interest as the Bankruptcy Court may direct, the Confirmation Order may be vacated by the Bankruptcy Court; provided, however, that, notwithstanding the filing of such motion, the Confirmation Order may not be vacated if each of the conditions to the Effective Date is either satisfied or duly waived before the Bankruptcy Court enters an order granting such motion.  If the Confirmation Order is vacated pursuant to this section 12.3 of the Plan, (i) the Plan shall be null and void; and (ii) nothing contained in the Plan shall (a) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtors or (b) prejudice in any manner the rights of the Debtors or any other party in interest.

**ARTICLE XIII**
**MISCELLANEOUS PROVISIONS**

13.1   **Headings**.  The headings used herein are inserted for convenience only and neither constitute a substantive portion hereof nor in any manner affect the provisions hereof.

13.2   **Business Day**.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

13.3   **Timing**.  Wherever the Plan provides that a payment or distribution shall occur "on" any date, it shall mean "on, or as soon as practicable after" such date.

13.4   **Binding Effect of the Plan**.  The provisions of the Plan shall be binding upon all parties to the Plan and inure to the benefit of the Debtors' Estates and their respective predecessors, successors, assigns, agents, officers and directors.  The terms of the Plan shall be enforceable against the Debtors, Creditors, Investors, and all parties-in-interest.

13.5   **Retention of Jurisdiction**.  Following the Confirmation Date and the Effective Date, the Bankruptcy Court shall retain jurisdiction in the Case over the provisions of this Plan including Disputed Claims, Rejection Claims, and Professional Fee Claims, and over all disputes and litigation which may be pending on the Confirmation Date, disputes regarding the APA or the Sale, Causes of Actions, including Avoidance Actions, whether or not commenced as of the Effective Date, and any controversies which may arise hereafter which would affect the Debtors' ability to carry out the Plan, until all such disputes and litigation shall be concluded and the Plan shall be fully consummated.  Further, the Bankruptcy Court shall retain jurisdiction for the purpose of the Distributions and any related issues which may arise.

13.6   **Governing Law**.  Except as mandated by the Bankruptcy Code or Bankruptcy Rules, as applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Virginia.

13.7   **Revocation**.  The Debtors reserve the right to revoke and withdraw the Plan prior to the entry of a Confirmation Order.  If the Debtors revoke or withdraw the Plan, the Plan shall

be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors, any other Person, or to prejudice in any manner the rights of such parties in any further proceedings involving the Debtors.

13.8 **Plan Controls**. In the event and to the extent that any provision of the Plan is inconsistent with the provisions of the Disclosure Statement, or any other agreement to be executed by any Person pursuant to the Plan, the provisions of the Plan shall control and take precedence. In the event of any inconsistency between any provision of any of the foregoing documents, and any provision of the Confirmation Order, the Confirmation Order shall control and take precedence.

13.9 **Releases and Exculpations and Limitation of Liability**.

**PLEASE NOTE THAT THIS SECTION OF THE PLAN GOVERNS THE RELEASE, EXCULPATION AND LIMITATION OF LIABILITY OF CERTAIN PARTIES WITH RESPECT TO THE CASES. PLEASE REVIEW THIS PROVISION CAREFULLY.**

13.9.1. **Release**. Except as otherwise provided in the Plan or Confirmation Order and except as to obligations arising under the Plan, as of the Effective Date, the Debtors, GCFM, American Immigration Center, LLC, A-3 LP, A-3 GP, and the Plan Administrator, and any of such parties' respective present or former members, partners, officers, directors, employees, advisors, managers, attorneys, representatives, financial advisors, and agents, and any such parties' successors and assigns (collectively, the "**Released Parties**") shall be released from any and all Claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise (the "**Released Claims**"), that the Debtors, or either of them would have been legally entitled to assert or further, that any holder of a Claim, Interest, or other person or entity would have been legally entitled to assert, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place before or on the Effective Date. For the avoidance of doubt, the releases contained herein are not intended to, and shall not operate as releases of direct third party claims by any Creditors or Investors against parties, even if listed above as Released Parties, other than the debtors listed above and the Plan Administrator or of claims by partners to partnership distributions from A-3 LP, unless such claims have been waived or relinquished elsewhere in this Plan or in the Plan Documents or by other means.

13.9.2. **Encore Release**. Encore has requested that the A-3 and A-4 Investors be provided the opportunity to opt-in to the provision of consensual third-party releases in favor of Encore's respective present or former members, investors, officers, directors, employees, advisors, managers, attorneys, representatives, financial advisors, and agents, and any such parties' successors and assigns (the "**Encore Releasees**") (which releases shall be reciprocal and mutual in all respects, subject to the terms below, by the above-referenced Encore Release in favor of the A-3 and A-4 Investors). All A-3 Investors and A-4 Investors shall have the option to "opt-in" to such mutual releases by checking a box on the Investor Consent. The Debtors shall solicit consent to the third-party release in the Investor Consent, which shall set forth the full and complete language of the proposed release.

*Except as otherwise provided in the Plan or Confirmation Order and except as to obligations arising under the Plan, as of the Effective Date, the Encore Releasees shall be released by the Debtors' estate and all A-3 and A-4 Investors from any and all direct and derivative Claims, debts, obligations, rights, suits, damages, actions, causes of action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing as of the Effective Date or thereafter arising, at law, in equity, or otherwise (the "**Encore Released Claims**"), that any of them would have been legally entitled to assert or that any holder of a direct or derivative Claim, Interest, or other person or entity would have been legally entitled to assert, based in whole or in part upon any act or omission, transaction, agreement, event, or other occurrence taking place before or on the Effective Date. For the avoidance of doubt, A-3 and A-4 Investors shall receive reciprocal and mutual releases from the foregoing Encore Released Parties from any claim of the Encore Released Parties, to the extent that such A-3 or A-4 Investor opts into the Encore Release.*

13.9.3. **Exculpation.**  The Released Parties, including the Encore Releasees (as defined above), and any property of or any professionals retained by the Debtors, shall not have or incur any liability to any person or entity for any act taken or omission, after the Petition Date, in connection with or related to these Cases or the operations of the Debtors' business during the Cases, including but not limited to (i) any actions taken or not taken in connection with the Sale; (ii) formulating, preparing, disseminating, implementing, confirming, consummating or administrating the Plan (including soliciting acceptances or rejections thereof); (iii) the Disclosure Statement or any contract, instrument, release or other agreement or document entered into or any action taken or omitted to be taken in connection with the Plan; (iv) any Distributions made pursuant to the Plan, except for acts constituting willful misconduct, gross negligence, or bad faith occurring during the Cases, or (v) failure of the Plan or Sale to comply with the requirements of the EB5 program, and in all respects such parties shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan

13.10  **Injunction**.  The satisfaction, releases and discharge pursuant to the Plan will also act as an injunction against any person or entity commencing or continuing any action, employment of process or act to collect, offset, secure, recoup or recover any Claim or cause of action satisfied, released or discharged under the Plan to the fullest extent authorized or provided by the Bankruptcy Code.

13.11  **Notice**.  Any notices or requests made in connection with this Plan shall be in writing and served either by (i) certified mail, return receipt requested, postage prepaid, (ii) hand delivery, or (iii) commercial overnight delivery service, freight prepaid, and will be deemed to have been given when received by the following parties at the following addresses:

To the Debtors:    Peter Huddleston
                   GreenTech Automotive, Inc.
                   One GreenTech Drive
                   Robinsonville, MS 38664

With copies to:      Mark S. Lichtenstein, Esq.
                     Crowell & Moring LLP
                     590 Madison Avenue, 20th Floor
                     New York, NY 10022

                     Kristen E. Burgers, Esq.
                     HIRSCHLER FLEISCHER
                     8270 Greensboro Drive, Suite 700
                     Tysons, VA  22102

All notices, requests, and distributions to any Creditor or Interest Holder shall be sent to such Creditor or Interest Holder at the address given in each Creditor's proof of claim or each Interest Holder's proof of interest. With regard to any scheduled Creditors or Interest Holder that did not file a proof of claim or interest, all notices, requests, and distributions shall be sent to such Creditor or Interest Holder at the address listed in the Debtor's schedules, unless the Liquidating Debtor receives other instructions in writing from such Creditor(s) or Interest Holder (s).  Notices, requests and distributions to creditors or Interest Holders shall be deemed to have been given when mailed to such address or deposited with a commercial overnight delivery service.  It shall be the obligation of each Creditor or Interest Holder to provide written notice of any change in address to the Debtors, or the Liquidating Debtor, as applicable.

13.13  **Successors and Assigns**.  The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

13.14  **Confirmation Pursuant to sections 1129(a)(10) and 1129(b) of the Bankruptcy Code**.  Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of confirmation by acceptance of the Plan by an impaired Class, if any.  If any class of Claims or Equity Interests entitled to vote on the Plan does not accept the Plan pursuant to section 1126(c), the Debtor reserves the right to request confirmation of the Plan under section 1129(b) of the Bankruptcy Code and to modify the Plan to the extent, if any, that confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification.

## ARTICLE XIV
## ENTRY OF FINAL DECREE AND CLOSING OF CASE

Once the Liquidating Debtor have substantially performed all of the duties specified in the Plan and commenced making such payments to holders of Allowed Administrative Expense Claims and Allowed Claims as are contemplated in Articles III and IV, it may file a certification of full administration and apply to the Court for the entry of a Final Decree.

*[REMAINDER OF PAGE INTENTIONALLY BLANK]*

WHEREFORE, the Debtors respectfully request confirmation of this Plan in accordance with section 1129(a) and/or section 1129(b) of the Bankruptcy Code.

August 26, 2019                          Respectfully submitted,

GREENTECH AUTOMOTIVE, INC.

By:    */s/ Peter Huddleston*
       Name: Peter Huddleston
       Title:   Chief Financial Officer

-and-

WM INDUSTRIES, CORP.

By:    */s/ Peter Huddleston*
       Name: Peter Huddleston
       Title:   Authorized Signatory

*/s/ Kristen E. Burgers*
Kristen E. Burgers (VSB No. 67997)
HIRSCHLER FLEISCHER
8270 Greensboro Drive, Suite 700
Tysons, Virginia  22102
Telephone:    (703) 584-8900
Facsimile:    (703) 584-8901
Email:        kburgers@hirschlerlaw.com

*/s/ Mark S. Lichtenstein*
Mark S. Lichtenstein (admitted pro hac vice)
Crowell & Moring LLP
590 Madison Avenue, 20th Floor
New York, New York 10022
Telephone:    (212) 223-4000
Facsimile:    (212) 223-4001
Email:        mlichtenstein@crowell.com

*Co-Counsel to the Debtors*